[S. F. No. 16416. In Bank.—November 4, 1940.]

JAMES G. FLAHERTY, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

Morgan J. Doyle for Petitioner.

Claude Minard for Respondent.

THE COURT.—This proceeding was instituted before local administrative committee No. 4 of The State Bar of California, for the city and county of San Francisco. Petitioner was charged with the conversion of claim No. 3310 in the principal amount of $6,359.68 against the California Mutual Building and Loan Association owned by one R. E. Pitcher. The local administrative committee found that petitioner converted said claim to his own use and recommended that he be suspended from the practice of law for a period of six months. The board of governors of The State Bar of California adopted the findings of the local administrative committee but recommended that petitioner be suspended for a period of one year.

The following is a summary of the facts appearing in the record as found by the local administrative committee. Petitioner was admitted to practice law in California on November 15, 1932. For a number of years prior thereto, and at the time of his admission to practice, petitioner had been engaged in the unlisted securities business in San Francisco. He continued to operate his securities business for several years after his admission to practice until March of 1936, when he was adjudged a bankrupt. The alleged conversion occurred on April 2, 1935. Petitioner was not actively engaged in the practice of law during the period from 1932 to 1936, but was identified as an attorney at law by appropriate listing in the San Francisco Telephone Directory and by the appearance of his name on the door of law offices maintained by an attorney having offices in the same building directly opposite the offices used by the petitioner in connection with his securities business. Petitioner devoted all of his time from 1932 to 1936 to the operation of his securities business and referred matters of a legal nature about which he was consulted at various times to the attorney with whom he had a law office association.

In April of 1935, R. E. Pitcher was the owner of claim No. 3310 in the principal amount of $6,359.68 against the California Mutual Building and Loan Association, then in the process of liquidation under the supervision of the building and loan commissioner of the state of California. Shortly prior to April 2, 1935, Pitcher had received a printed notice of petitioner's facilities for the collection or sale of claims against insolvent building and loan associations, and on said

last-mentioned date Pitcher called on petitioner to discuss the sale of his said claim. Pitcher informed petitioner that he desired to sell his claim for fifty cents on the dollar and agreed to leave the claim with petitioner for a period of two or three weeks subject to the understanding that if petitioner was unable to dispose of it within that time at the price stated, it would be returned to Pitcher. Petitioner agreed to accept Pitcher's claim in accordance with the foregoing understanding and said claim was thereupon delivered to petitioner who gave Pitcher a form of receipt which stated that said claim was ''to be sold at fifty cents on the dollar and proceeds accounted for''.

At the same time Pitcher executed an assignment of his interest in the claim to petitioner and also a second assignment similar in form, with the exception that the name of the assignee was left blank.

On the same date that Pitcher delivered said claim to petitioner, the latter, without the knowledge or consent of Pitcher, and contrary to the instructions given to and accepted by the petitioner, transferred the claim into his name on the records of the Oakland office of the building and loan commissioner, and thereupon, without the knowledge or consent of Pitcher, converted said claim to his own use by applying the full face value thereof, together with other similar claims in varying amounts, in payment of the purchase price of two parcels of real property which were included in the assets of the insolvent California Mutual Building and Loan Association.

During a period of several months subsequent to April 2, 1935, Pitcher made numerous visits and telephone calls at the office of petitioner to ascertain when his claim would be sold and the proceeds paid to him. At no time on the occasion of these inquiries did petitioner inform Pitcher that he had converted the claim to his own use, but, on the contrary, misrepresented to Pitcher, and to a man named Murphy, who shared an interest in the claim with Pitcher, that he was negotiating for its sale. On one occasion when Pitcher demanded the return of his claim petitioner explained that it was in San Jose and that he would arrange its return on the following day.

On May 7, 1935, petitioner paid Pitcher the sum of $500 and promised to pay the balance in full as soon as the claim had been sold. On September 25, 1935, Pitcher, having failed

to collect the balance due or obtain the return of his claim, refunded the $500 payment to petitioner in the form of a cashier's check and demanded the return of his claim.

In the latter part of 1935, the exact date being in dispute, when Pitcher questioned petitioner about his claim and explained that he was leaving San Francisco, petitioner agreed to deposit the proceeds of the sale of the claim in Pitcher's bank account. Petitioner wrote on the receipt dated April 2, 1935, the notation, "Proceeds, if sold, to be deposited in Crocker's First National Bank, San Francisco".

On December 30, 1935, petitioner paid to Pitcher the sum of $317.98 representing a five per cent liquidating dividend issued and paid about that time to those holding outstanding claims against the insolvent California Mutual Building and Loan Association and representing the dividend which would have been paid to Pitcher if his claim had not been previously liquidated by the petitioner. It was about the time of this payment that Pitcher first learned that his claim had been used by petitioner in connection with certain real estate transactions between petitioner and the office of the building and loan commissioner.

On April 17, 1937, a second payment of $317.98 representing a similar five per cent liquidating dividend was made to Pitcher by petitioner after Pitcher had engaged an attorney and cited petitioner to appear before the bond and warrant clerk's office in San Francisco to show cause why a warrant should not be issued for his arrest. In addition to this second payment, petitioner promised at that time to pay the agreed value of the claim in instalments and no warrant was issued.

In the meantime, and in March of 1936, petitioner discontinued the operation of his securities business and was adjudged a bankrupt. Pitcher filed no appearance in the bankruptcy proceeding and when no payment other than the two checks, each in the amount of $317.98 were received from petitioner, Pitcher, in March of 1938, presented the matter to the San Francisco grand jury, but no indictment was returned.

There is a direct conflict in the testimony of Pitcher and that of the petitioner regarding the agreement entered into between the parties on April 2, 1935, when the claim was deposited with petitioner and the two forms of assignment were executed by Pitcher. Pitcher testified that the claim

was to be sold by petitioner within two or three weeks at fifty cents on the dollar and if this could not be accomplished, that the claim would be returned to him. Petitioner testified that on April 2, 1935, the California Mutual Building and Loan Association claims were selling on the market at forty-five cents on the dollar; that Pitcher wanted fifty cents, and in consideration of this possible five-point advantage, he agreed to permit petitioner to use the claim for his personal purposes subject to the understanding that if the market reached fifty cents he would be paid that price for his claim, and if not, that a similar claim of like value would be returned to him. The local administrative committee resolved this conflict in the evidence against petitioner.

The record in this proceeding discloses that petitioner was suspended from the practice of law in California for a period of three months on June 2, 1938, by an order of this court upon recommendation by the board of governors of The State Bar of California for misconduct committed in February of 1936, arising out of the filing with the commissioner of corporations of California a false report in connection with his securities business. No petition for a review of said disciplinary proceeding was filed by petitioner in this court, and the formal order of suspension of petitioner for a period of three months was made by this court at that time upon the recommendation of the board of governors of The State Bar of California.

In submitting their recommendation for disciplinary action in this matter, both the local administrative committee and the board of governors state that they considered the record of petitioner as a member of The State Bar including the disciplinary proceeding above mentioned, and that the violations in both proceedings were committed while petitioner was engaged in the unlisted securities business and not while acting as an attorney and counselor at law.

The observation is made in the report of the local administrative committee that while this latter fact does not lessen the seriousness of petitioner's acts in either of the two proceedings, it is a circumstance that should be noted in determining the extent of the discipline to be recommended in this proceeding. Said committee also stated that it had considered the testimony of petitioner to the effect that many thousands of transactions cleared through his office while engaged in the unlisted securities business, since his admis-

sion to practice law, and that only two charges of wrongful conduct against petitioner had been reported to the office of The State Bar.

Petitioner contends that the evidence produced before the local administrative committee is insufficient to support the findings of fact adopted by said committee and approved by the board of governors and that the conclusion of the board of governors based upon the findings of the local administrative committee approved and adopted by said board, that the conduct of petitioner involved a breach of trust, is both contrary to the evidence and contrary to law.

After a careful review of the entire record in this case we are forced to the conclusion that the findings of fact of the local administrative committee are amply supported by the evidence. It seems to us more consonant with rational conduct, that Pitcher would have delivered his claim to petitioner for sale at fifty cents on the dollar if and when that price could be obtained, and with the understanding that as soon as the purchase price was received for said claim, the same would be paid to Pitcher, than that Pitcher, who was a total stranger to petitioner should authorize petitioner to use said claim in connection with the real estate transaction in which Pitcher was in nowise interested without any definite arrangement as to when Pitcher would receive the amount which he was demanding for said claim. It was obviously no advantage to Pitcher to permit petitioner to use his claim in connection with the real estate transaction, as petitioner, according to his own testimony, had not agreed to pay Pitcher any additional sum for the right to use said claim in connection with said transaction. If petitioner was telling the truth, Pitcher authorized him to use his claim in connection with the real estate transaction in which Pitcher was not interested, with the understanding that if and when the market price of said claim reached fifty cents on the dollar, petitioner would pay Pitcher the value of said claim in cash on that basis, and in the event that the market price of said claim did not reach fifty cents on the dollar, petitioner would return to Pitcher a claim or claims of the same value as the claim which Pitcher delivered to petitioner.

Regardless of the slight inaccuracies in the testimony of Pitcher and the witness Murphy, which we do not think affected their credibility as witnesses, their testimony relating to the nature of the transaction with petitioner and his con-

duct up to the time of the institution of this proceeding, appears to us to be convincing, and we think that the members of the local administrative committee were clearly justified in arriving at the conclusion expressed in their findings of fact which were approved and adopted by the board of governors.

We agree with the conclusion reached by the local administrative committee and the board of governors that petitioner assumed a fiduciary relationship toward Pitcher as a result of the agreement of April 2, 1935; that in converting the property of Pitcher to his own use, and in misrepresenting the true facts regarding the disposition of said claim, petitioner committed a flagrant breach of his trust obligation to Pitcher and a violation of his oath and duties as an attorney and counselor at law within the meaning of subdivisions 2 and 5 of section 287 of the Code of Civil Procedure of the state of California, as provided by said section at the time of the filing and service of the order to show cause in this proceeding, and we are of the opinion that the discipline recommended by the board of governors to be imposed upon petitioner for such misconduct is less severe than is warranted by the facts and circumstances in connection with this case. However, we are not disposed to override the recommendation of the board of governors, and the order in this case is, that petitioner shall be, and he is, hereby suspended from the practice of law in the state of California for a period of one year, said suspension to take effect at the expiration of thirty days from the filing of this decision.

Rehearing denied.