[L.A. No. 30077. In Bank. May 11, 1973.]

KENNETH I. PERSION, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

COUNSEL

Brown & Altshuler and Leo Altshuler for Petitioner.

F. LaMar Forshee, Herbert M. Rosenthal and Ronald W. Stovitz for Respondent.

OPINION

**THE COURT.**—This is a proceeding to review a recommendation of the Disciplinary Board of the State Bar of California that petitioner be suspended from the practice of law in this state for a period of three years on conditions of probation, including actual suspension for the first year. Petitioner was admitted to practice law in California in 1949, and he has no prior record of discipline.

The record shows that in 1968 and 1969, while petitioner was employed as the attorney in a decedent's estate matter in Los Angeles County, he misappropriated and commingled $12,500 of the estate's funds, gaining access thereto by the practice of deceit and forgery upon his client, Viola Ives, the executrix, during a period of more than three months. In particular, petitioner in October 1968 made false representations to the executrix to induce her to deliver to him two checks on the Union Bank commercial account of the estate, which checks were signed by her in blank. Although he subsequently represented to Mrs. Ives that he would destroy the two checks, he failed to do so. On the contrary, he personally, without the knowledge or consent of Mrs. Ives, caused the checks to be filled in to his order in the amounts of $2,000 and $3,000, respectively, and received payment thereon. Later, in February 1969, and again without Mrs. Ives' knowledge or consent, petitioner forged her signature to a withdrawal slip for $7,500 on the estate's savings account at Union Bank, caused that amount to be deposited in the estate's commercial account, forged Mrs. Ives' signature to an estate commercial account check for $7,500 payable to his trust account, deposited the $7,500 in his trust account, and commingled and converted said sum to his own use.

Mrs. Ives subsequently obtained a bank statement on the commercial account and discovered that $12,500 had been withdrawn from the account on her signature. She went to the bank, inspected copies of the documents bearing her signature, and advised the bank that she had not signed the bank

documents or authorized the withdrawal of the funds. She also reported the matter to the district attorney and a local bar association.

On April 17, 1969, the bank's security officer contacted petitioner and advised him that Mrs. Ives had stated that her signature had been forged on the documents for the transfer of the $7,500 and that she had not consented to petitioner's making the $2,000 and $3,000 "blank" checks payable to his order. Petitioner promised to make restitution within 30 days, and by May 12, 1969, he had made full restitution, paying $12,647.11, which sum included interest.

Following the service on petitioner of a notice to show cause herein, a hearing was held before the local administrative committee. The committee recommended that petitioner be suspended from the practice of law in California for a period of three years upon condition that he be placed on probation for three years and be suspended from practice for the first year of probation.

Petitioner asked for an additional hearing to present evidence in mitigation, and such a hearing was held. Thereafter, the local administrative committee changed its recommendation, increasing the probationary period to five years, but lowering the period of actual suspension to three months. The disciplinary board, however, upon reviewing the matter, adopted by a vote of eight to four the recommendation initially made by the local administrative committee.[1]

Petitioner candidly admits that his conduct "regardless of any compelling circumstances, was indeed disgraceful, abhorrent and inexcusable." He nevertheless argues that the discipline recommended by the disciplinary board is too severe and that the discipline recommended by the local administrative committee after it heard the evidence presented in his behalf in mitigation should be adopted by this court.

Petitioner's evidence in mitigation consists principally of testimony with respect to the financial difficulties in which he found himself because of maintaining an extremely high standard of living and having domestic problems which seemingly made it impossible for him to solve his financial problems. He testified that several years prior to his misappropriation of the $12,500 he had purchased for $135,000 an 8,000-square-foot home in Holmby Hills; that there was a balance of $75,000 due under the first

---

[1]The four members of the disciplinary board voting no did so on the ground that the degree of discipline recommended was excessive. Three of the four members also expressed the view that in making the recommendation the board had not given adequate consideration to mitigating factors.

deed of trust, but that there was no second deed of trust on it, and his equity was substantial; that during 1968 and 1969 he had other substantial assets, including a home at Lake Arrowhead, valued at between $35,000 and $50,000 (on which he owed about $14,000), automobiles, and boats; that he used the $12,500 in trust funds principally to pay delinquent and currently due real property taxes on his Holmby Hills home, as well as delinquent payments on the indebtedness owing under the deeds of trust on his Holmby Hills and Lake Arrowhead homes, orthodontic work for his three children, insurance payments, automobiles, and boats.

Petitioner further testified that during the period in question his income from his law practice had decreased, following the termination of major litigation on behalf of several clients, but that his financial obligations had continued; that his wife was unconcerned about financial affairs and felt that he should provide for her and their children regardless of the circumstances; that at that time she suffered from physical illness and psychological problems; that although he wanted to sell the Holmby Hills residence in order to take care of his pressing financial obligations, his wife refused to consent, and he could not sell the property without her consent; that he did not wish to break up the family unit by instituting a divorce proceeding; and that he already had bank loans outstanding and could not request further bank financing.

In August 1969, petitioner's wife instituted a divorce proceeding against him, and on May 14, 1971, an interlocutory judgment of dissolution of marriage was entered. In September 1969, during the pendency of the family law proceeding, the Holmby Hills home was sold for $205,000 "cash."

After testifying as above set forth, petitioner gave the following explanation of his use of the $12,500 of estate funds and his restitution thereof: "But it was as a result of pressures like this that led to my seeking in my own mind the borrowing of funds, not the conversion for an indefinite period of time, but for the use of funds for a period sufficient to permit me to get the funds back before they were discovered. *Immediately upon discovery* I sought to collect amounts due me, as well as to borrow temporarily until I could sell the residence and convert some of the assets that we had into some liquid cash." (Italics added.)

Petitioner presented further evidence of his diligent service to clients, his service to the community, and his involvement in religious, charitable, and political activities, as well as testimony by an assistant professor of psychiatry at UCLA to the effect that the risk of any future occurrence of

misconduct by petitioner was "quite minimum" and character testimony from his certified public accountant, his legal secretary, his attorney in this proceeding, a former employee of one of his corporate clients, and one of his present clients. All of the latter witnesses testified that although they were aware of petitioner's misconduct in the handling of the estate funds involved herein, they placed a high degree of trust and confidence in him as an attorney.

Additionally, petitioner testified that he was financially "liquid," had no delinquent debts, owned the Lake Arrowhead residence with a $14,000 first loan on it, had between $7,000 and $8,000 cash in the bank, owned securities worth approximately $3,800, and had other "substantial assets free and clear, automobiles, boats, country club memberships . . . ." He further testified that he had always been current in his family support payments of $850 per month.

■ As in *In re Plotner*, 5 Cal.3d 714 [97 Cal.Rptr. 193, 488 P.2d 385], and *Mack* v. *State Bar*, 2 Cal.3d 440 [85 Cal.Rptr. 625, 467 P.2d 225], petitioner admits that his conduct warrants discipline, but urges that the disciplinary board failed to consider mitigating circumstances established by him and that the discipline recommended by the disciplinary board is excessive under all the circumstances. As pointed out in both *Plotner* and *Mack,* however, the burden is on petitioner to show that the disciplinary board's recommendation is erroneous or unlawful (p. 716(1) of 5 Cal.3d; p. 443(1) of 2 Cal.3d); and petitioner has not met this burden.

■ Petitioner candidly admitted that the money was misappropriated to pay outstanding debts to enable him to maintain his high standard of living without selling the real property belonging to himself and his wife. He apparently desired to sell in order to raise the funds he needed, but his wife adamantly refused to agree to join in any sale, and, rather than break up his marriage, petitioner acceded to his wife's wish not to place their home on the market for sale. He was aware, however, that with the substantial equity he had in the property, there was a possibility he could raise money by encumbering the property with a second deed of trust. He testified in this respect that it would have been difficult and that the expense of doing so would have been very great. He did not say that he had discussed the matter with his wife and that she refused to participate in such a transaction. He testified merely: "The house had substantial value, but to get second mortgage money on a residence of that size is most difficult, and the point program was proceeding on ten points plus 10% plus broker's commission plus legal fees and so forth. I found my-

self in a position where it was difficult to turn, other than to see some temporary means of alleviating things and convincing my wife that we had to sell the residence." No showing was made that petitioner could not have arranged for such a loan had he been willing to pay the rather exorbitant expenses incidental thereto, and it would appear that he chose to misappropriate funds from the estate as a means of temporarily solving his financial problems until he could arrange for financing at a lower cost to him.

█ As pointed out by this court in *In re Freiburghouse,* 52 Cal.2d 514, 516 [2] [342 P.2d 1], "An attorney's misappropriation of a client's funds is an offense which involves moral turpitude and clearly warrants disbarment in the absence of extenuating circumstances." █ In the present case, extenuating circumstances were found, justifying suspension rather than disbarment. However, no showing has been made that the disciplinary board's recommendation of three years' suspension on conditions of probation, including actual suspension for the first year, is unwarranted under the circumstances shown; and it is this court's opinion that the discipline recommended by the disciplinary board is fair, amply warranted, and even lenient and that it should be imposed.

It is ordered that petitioner be suspended from the practice of law for a period of three years. Execution of such suspension is stayed for the period of three years, during which period he is placed on probation upon the following conditions: that he is suspended for the first year and that he comply with the conditions set forth in the "Findings of Fact and Recommendation Adopted by the Disciplinary Board (Disciplinary Board Minutes, 15 June 1972)," which conditions are hereby adopted as part of the order of this court. It is further ordered that within 30 days after the effective date of this order petitioner shall perform the acts specified in rule 955, subdivision (a), California Rules of Court, and that within 40 days after the effective date of this order petitioner shall file with the clerk of this court, with proof of service of a copy on the State Bar at its San Francisco office, an affidavit containing the matters specified in subdivision (c) of the foregoing rule. This order is effective 30 days after the filing of this opinion.