10 Cal.3d 742 (1974)
518 P.2d 337
111 Cal. Rptr. 905
SIDNEY BRADPIECE, Petitioner,
v.
THE STATE BAR OF CALIFORNIA, Respondent.
Docket No. L.A. 30137.
Supreme Court of California. In Bank.
February 6, 1974.
*743 COUNSEL
Clarence S. Hunt for Petitioner.
F. LaMar Forshee, Herbert M. Rosenthal and Ronald W. Stovitz for Respondent.
OPINION
THE COURT.
This is a proceeding to review a recommendation of the Disciplinary Board of the State Bar of California that petitioner be suspended from the practice of law for three years.
*744 Petitioner was admitted to practice in 1959. He has no prior record of discipline. In August of 1969 he was a sole practitioner.
The essential facts are not in dispute. Petitioner was retained by Katherine Berggreen to represent her and her minor son in connection with their claims for personal injuries sustained in an automobile accident in September 1968. In August of 1969, the Los Angeles County Superior Court approved a settlement in compromise of the minor's claim for $15,000; the court ordered payment of $3,750 in attorney's fees and $3,666.80 in medical expenses, out of the proceeds of the settlement, with the balance of $7,583.20 to be deposited in Los Angeles Federal Savings and Loan, in the name of Katherine Berggreen as trustee, not to be withdrawn without prior court order.
On the day of the order, petitioner and his clients went to the offices of the opposing party's insurance company, where they obtained one check for $15,000 made out to petitioner and his clients. They proceeded to the Security Pacific Bank, where she endorsed the check and it was deposited without her knowledge. They then proceeded to Los Angeles Federal Savings and Loan, where petitioner represented to Mrs. Berggreen that an account had been established in her name, pursuant to court order.
The account was not opened; instead petitioner had deposited the $15,000 in his own bank account, which was denominated as a trust account but used by petitioner as a general business account. Thereafter, petitioner used these funds, $11,250 of which belonged to the clients, for his own purposes.
The medical bills were not paid, and upon inquiry Mrs. Berggreen discovered there was no account in her name. She consulted another attorney and a complaint was lodged with the State Bar in November 1969. At the end of that same month, petitioner delivered to Mrs. Berggreen's new attorney a check for $11,250.
Petitioner was also representing Mrs. Berggreen in her claim arising out of the same accident. In August and September of 1969, petitioner made personal loans in an aggregate sum of $3,208 to Mrs. Berggreen, under a loose understanding of repayment upon settlement of the claims. Mrs. Berggreen testified that she assumed the loans, made for essential living expenses, were advances on her anticipated settlement. In December 1969, through her attorney, she returned to petitioner $2,208 and a promissory note for $1,000 which remains unpaid.
At the hearing before the local administrative committee, petitioner acknowledged his guilt and accepted full responsibility for the violation *745 of his obligations. He offered no excuses for his conduct and indicated his anticipation of discipline; in the words of the local committee, his attitude was that of self-reproach.
Petitioner testified that for some years prior to August 1969, his financial affairs had been chaotic; he was unable to handle checking accounts and eventually set up the spurious trust account to avoid attachments. The settlement proceeds herein were the only funds belonging to clients which went through this trust account. In January 1970, he entered into a partnership and sound procedures were established in the maintenance of trust accounts. Upon inquiry by members of the committee, petitioner testified that while he trusted himself not to misappropriate clients' funds again, he would prefer not to handle his own financial affairs, he did not draw on the trust accounts  at his own request  and the office books were handled by a competent bookkeeper.
Petitioner's testimony also reveals the motive for the embezzlement. For some time prior to the complaint, petitioner had concealed from his wife his true financial situation, representing to her that he had substantial savings accumulated. In August 1969, his wife's family called for $8,500 from funds held for investment in her behalf. He was embarrassed to reveal his lack of funds, fearing such revelation would cause the breakup of his marriage. These domestic problems have since been resolved; petitioner's wife is fully aware of the prior concealment and helped him to make full restitution.
The local administrative committee found that petitioner had violated his oath and duty as an attorney within the meaning of section 6103, as prescribed by sections 6067 and 6068 of the Business and Professions Code, that he had violated rule 9 of the Rules of Professional Conduct, and that he had committed acts involving moral turpitude within the meaning of section 6106 of the Business and Professions Code.
The members of the local administrative committee were unable to agree on the discipline to be recommended. One member declared suspension for one year to be appropriate, and another asserted that suspension for seven years was necessary, including five years' actual suspension and two years under detailed conditions of probation. These two members indicated the surrounding circumstances, petitioner's full restitution, and his current legal practices were mitigating factors. The third member recommended disbarment, not because of the embezzlement alone, but rather because of the "cold, calculated and deliberate" nature of the theft and petitioner's self-confessed inability to handle his business affairs.
*746 Upon review, the disciplinary board made new findings after the presentation of additional evidence on petitioner's behalf. Petitioner objected that the evidence did not support a conclusion of a prior existing plan to convert the settlement proceeds; it was only by fortuity that the check was in a lump sum, instead of the procedure ordered by the court that the balance after fees and medical payments be made payable to the minor, the minor's trustee and the bank. (1a) The declarations of three attorneys were admitted, to the effect that petitioner had been actively associated with them in complex litigation in the three and a half years since the events herein, and had demonstrated competence, honesty and full compliance with the ethical standards of the profession. Petitioner's partner declared that during the partnership petitioner has conducted himself with propriety and integrity, that petitioner's problems had been resolved and that he was completely rehabilitated.
Petitioner's psychiatrist wrote that petitioner's misconduct was in response to economic and domestic problems, which were overcome during treatment. The doctor believed petitioner's testimony, in which he denigrated his ability to handle his business affairs, was an unrealistically negative self-assessment caused by remorse and self-criticism.
The disciplinary board by a vote of nine to five recommended suspension for three years; three of the dissenters recommended disbarment, and two felt five years' suspension including one year actual was appropriate. Petitioner does not challenge the findings of the board, but urges three years' actual suspension is an unduly severe hardship in view of the circumstances surrounding his defalcation.
(2) In a proceeding to review the disciplinary recommendations of the State Bar for an attorney's suspension from practice, the burden is on the petitioner to show the board's recommendation is erroneous. (See, e.g., Mack v. State Bar (1970) 2 Cal.3d 440 [85 Cal. Rptr. 625, 467 P.2d 225]; Reznik v. State Bar (1969) 1 Cal.3d 198, 201-202 [81 Cal. Rptr. 769, 460 P.2d 969, 40 A.L.R.3d 161]; Corn v. State Bar (1968) 68 Cal.2d 461, 462 [67 Cal. Rptr. 401, 439 P.2d 313]; Hyland v. State Bar (1963) 59 Cal.2d 765, 767 [31 Cal. Rptr. 329, 382 P.2d 369].) We have determined after a complete review of the record that to a certain extent petitioner has met this burden.
Petitioner's misappropriation of his minor client's settlement proceeds is a most grievous breach of professional ethics and morality, and such conduct is certain to endanger the confidence of the public in the legal profession. (Tardiff v. State Bar (1971) 3 Cal.3d 903, 908 [92 Cal. Rptr. 301, 479 P.2d 661]; Resner v. State Bar (1960) 53 Cal.2d 605, 612 [2 Cal. *747 Rptr. 461, 349 P.2d 67].) The usual discipline imposed for such a breach is disbarment, in the absence of strong mitigating circumstances. (Demain v. State Bar (1970) 3 Cal.3d 381, 387 [90 Cal. Rptr. 420, 475 P.2d 652]; In re Freiburghouse (1959) 52 Cal.2d 514, 516 [342 P.2d 1]; 1 Witkin, Cal. Procedure (2d ed. 1970) § 200, p. 206.)
Each case, however, must be decided on its own particular facts, and there are no fixed standards as to the appropriate penalty; as a result, similar offenses have received widely varying degrees of punishment. (See Yapp v. State Bar (1965) 62 Cal.2d 809, 819 [44 Cal. Rptr. 593, 402 P.2d 361].) (3) While the recommendations of the disciplinary board are to be given great weight, this court has plenary power to review such recommendations and make such order as it deems appropriate. Although petitioner's conduct calls for discipline to protect both the profession and the public, we find mitigating factors to be considered in determining the extent of that discipline.
(1b) Petitioner had no disciplinary record in his 10 years of practice prior to the instant events. (In re Jones (1971) 5 Cal.3d 390, 401 [96 Cal. Rptr. 448, 487 P.2d 1016]; Himmel v. State Bar (1971) 4 Cal.3d 786, 799 [94 Cal. Rptr. 825, 484 P.2d 993]; Yapp v. State Bar (1965) supra, 62 Cal.2d 809, 819.) He has continued to practice law for four years since the events involved herein, successfully representing his clients' interests and obtaining their trust. (In re Higbie (1972) 6 Cal.3d 562, 573 [99 Cal. Rptr. 865, 493 P.2d 97].) The confidence presently placed in him by fellow attorneys indicates their appraisal that this misconduct will not again occur. (Demain v. State Bar (1970) supra, 3 Cal.3d 381, 388.)
(4) Financial and domestic difficulties may be considered in mitigation of discipline for professional misconduct. (Benson v. State Bar (1971) 5 Cal.3d 382, 388 [96 Cal. Rptr. 30, 486 P.2d 1230].) (1c) Petitioner anticipated domestic disaster, albeit erroneously, if his lack of financial success was revealed to his wife; his financial affairs were in complete disorder. With his wife's family pressing him for funds, the recent birth of his third child, and the fortuitous circumstances of the lump sum check, he succumbed to these pressures and embezzled his client's money. Apparently these pressures no longer exist; he practices today in a business law partnership with adequate procedures for accurate accounting and preservation of trust funds, and his wife, fully cognizant of his financial difficulties, is supportive of his rehabilitative efforts. Petitioner sought and received psychiatric help in resolving these problems, and his prognosis appears favorable.
The State Bar gives great weight to petitioner's self-confessed inability *748 to handle his financial matters. It appears that petitioner's desire not to handle the partnership trust accounts is a corrective measure to ensure his finances do not again become chaotic. The establishment of orderly office and accounting procedures is to be commended, illustrating petitioner's desire that the events herein are not repeated (Black v. State Bar (1962) 57 Cal.2d 219, 227 [18 Cal. Rptr. 518, 368 P.2d 118]), rather than being deemed factors in aggravation. Petitioner's testimony in this regard can also be explained by his psychiatrist's statements about his negative self-image and contrition.
There are extrinsic factors favorable to petitioner. He made prompt restitution after complaint but before proceedings against him began. Although his misconduct is not excused in any way merely because the client ultimately suffered no loss, it is worthy of note that petitioner gratuitously loaned money to the complainant out of humane motives and was paid no fee for the settlement of her claim. Petitioner's disavowal of intent to claim payment on the promissory note from the complainant further evinces a recognition of his wrong and a desire to make amends.
Petitioner's behavior in the hearings also influences our decision. He has displayed candor, cooperation and remorse throughout the disciplinary proceedings, and a willingness to accept punishment and to rehabilitate himself. (In re Higbie (1972) supra, 6 Cal.3d 562, 574; Demain v. State Bar (1970) supra, 3 Cal.3d 381, 388; cf. Honoroff v. State Bar (1958) 50 Cal.2d 202, 210 [323 P.2d 1003].)
(5) The purpose of a disciplinary proceeding is not punitive but to inquire into the fitness of the attorney to continue in that capacity for the protection of the public, the courts, and the legal profession. (Clancy v. State Bar (1969) 71 Cal.2d 140 [77 Cal. Rptr. 657, 454 P.2d 329]; Yapp v. State Bar (1965) supra, 62 Cal.2d 809, 817; Demain v. State Bar (1970) supra, 3 Cal.3d 381, 386.) (1d) With that purpose foremost in mind, we conclude that five years' suspension including one year's actual suspension is sufficient discipline to further our primary interest in protection and prevention.[1]
*749 It is ordered that petitioner be suspended from the practice of law for a period of five years, the first year of which shall be actual suspension. Following this one-year period, he shall be placed on probation for four years during which he may engage in practice under the conditions recommended by the local administrative committee of the State Bar. It is further ordered that within 30 days after the effective date of this order petitioner shall perform the acts specified in rule 955, subdivision (a), of the California Rules of Court, and that within 40 days after the effective date of this order petitioner shall file with the clerk of this court, with proof of service of a copy on the State Bar at its San Francisco office, an affidavit containing the matters specified in subdivision (c) of the foregoing rule. This order is effective 30 days after the filing of this opinion.
WRIGHT, C.J.
I concur in the opinion of the majority that the conduct of petitioner merits his suspension from the practice of law. I dissent, however, as to the length of time such suspension should be imposed. Petitioner's embezzlement appears to have been "cold, calculated and deliberate." I would adopt the recommendation of the Disciplinary Board of the State Bar of California that he be suspended from the practice of law for a period of three years.
NOTES
[1] Parenthetically, we note the discipline imposed in cases involving substantially similar misappropriation or conversion of client's funds has been substantially less than three years' actual suspension; e.g.; Haley v. State Bar (1963) 60 Cal.2d 404 [33 Cal. Rptr. 609, 385 P.2d 1], no restitution, one-year suspension; Demain v. State Bar (1970) supra, 3 Cal.3d 381, five years' suspension, including six months' actual suspension, with restitution a condition of probation; Benson v. State Bar (1971) supra, 5 Cal.3d 382, five years' suspension, including one year actual suspension; Mack v. State Bar (1970) supra, 2 Cal.3d 440, with prior record of discipline, five years' suspension including two years' actual suspension; Fielding v. State Bar (1973) 9 Cal.3d 446 [107 Cal. Rptr. 561, 509 P.2d 193], similar prior misconduct, three years' suspension including six months' actual; Persion v. State Bar (1973) 9 Cal.3d 456 [107 Cal. Rptr. 708, 509 P.2d 524], three years' suspension, including one year actual; Himmel v. State Bar (1971) supra, 4 Cal.3d 786, one-year suspension, three months' actual; Flaherty v. State Bar (1940) 16 Cal.2d 483 [106 P.2d 617], with prior disciplinary record, one year's suspension; Di Gaeta v. State Bar (1963) 59 Cal.2d 116 [28 Cal. Rptr. 305, 378 P.2d 577], six months' suspension, including three months' actual, with restitution a condition of probation; Simmons v. State Bar (1969) 70 Cal.2d 361, 366 [74 Cal. Rptr. 915, 450 P.2d 291], with prior disciplinary record, no extenuating circumstances and evasive, false testimony, four years' suspension, including two years' actual; Yapp v. State Bar (1965) supra, 62 Cal.2d 809, three years' suspension, one year actual; Walter v. State Bar (1970) 2 Cal.3d 880 [87 Cal. Rptr. 833, 471 P.2d 481], two years' suspension including six months' actual; Lee v. State Bar (1970) 2 Cal.3d 927 [88 Cal. Rptr. 361, 472 P.2d 449], three years' suspension, including one year actual.