[S.F. No. 24703. Sept. 20, 1984.]

RICHARD G. ALBERTON, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

COUNSEL

Richard G. Alberton, in pro. per., and Peter diDonato for Petitioner.

Herbert M. Rosenthal, Truitt A. Richey, Jr., and Richard J. Zanassi for Respondent.

OPINION

THE COURT.—The Review Department of the State Bar Court has unanimously recommended that petitioner, Richard G. Alberton, be suspended from the practice of law for five years, that execution of the suspension be stayed, and that petitioner be placed on probation for five years with certain conditions, including actual suspension for the first year of the probationary period.[1] This court adopts the review department's recommendation.

I.

On June 11, 1982, petitioner was charged with numerous statutory and rule violations warranting discipline, including: (1) violating his oath and duties as an attorney (Bus. & Prof. Code, §§ 6067, 6068, and 6103[2]); (2) committing acts involving moral turpitude, dishonesty or corruption (§ 6106); (3) committing an act of deceit with intent to deceive the court (§ 6128, subd. (a)); (4) willfully delaying his client's suit with a view to his own gain (*id.*, subd. (b)); (5) performing legal services for a client when he knew or should have known that he did not possess the learning and skill ordinarily possessed by lawyers who perform similar services without associating or consulting another lawyer who possesses the requisite learning and skill (rule 6-101(1)); (6) failing to use reasonable diligence and his best judgment to accomplish the purpose for which he was employed (rule 6-101(2)); (7) misleading a judge by a false statement of fact (rule 7-105(1)); and (8) failing to deposit client funds in an identifiable client trust account

---

[1]The hearing panel's recommendation of discipline differed from that of the review department. The hearing panel recommended that petitioner be suspended from the practice of law for three years, that execution of the suspension be stayed, and that petitioner be placed on probation for three years with certain conditions, including actual suspension for ninety days.

[2]Unless otherwise noted, all statutory references are to the Business and Professions Code and all references to rules are to the Rules of Professional Conduct.

(rule 8-101(A)).[3] All allegations of misconduct arose out of petitioner's representation of Rosalind C. in a criminal action.

The hearing panel found five of the eight allegations true. It concluded that petitioner had willfully violated sections 6067, 6103 and 6106, and rules 6-101(1), 6-101(2) and 8-101(A), but found insufficient evidence to sustain the rule 7-105, section 6068, and section 6128 violations. The review department unanimously adopted the hearing panel's findings and conclusions and made one additional finding.[4]

---

[3]Rule 6-101 provides: "A member of the State Bar shall not willfully or habitually

"(1) Perform legal services for a client or clients if he knows or reasonably should know that he does not possess the learning and skill ordinarily possessed by lawyers in good standing who perform, but do not specialize in, similar services practicing in the same or similar locality and under similar circumstances unless he associates with, or, where appropriate, professionally consults another lawyer who he reasonably believes does possess the requisite learning and skill;

"(2) Fail to use reasonable diligence and his best judgment in the exercise of his skill and in the application of his learning in an effort to accomplish, with reasonable speed, the purpose for which he is employed.

"The good faith of an attorney is a matter to be considered in determining whether acts done through ignorance or mistake warrant imposition of discipline under Rule 6-101."

Rule 7-105(1) provides in relevant part: "In presenting a matter to a tribunal, a member of the State Bar shall: [¶] (1) Employ, for the purpose of maintaining the causes confided to him such means only as are consistent with truth, and shall not seek to mislead the judge, judicial officer or jury by an artifice or false statement of fact or law. . . ."

Rule 8-101(A) provides: "All funds received or held for the benefit of clients by a member of the State Bar or firm of which he is a member, including advances for costs and expenses, shall be deposited in one or more identifiable bank accounts labeled "Trust Account", "Client's Funds Account" or words of similar import, maintained in the State of California, or, with written consent of the client, in such other jurisdiction where there is a substantial relationship between his client or his client's business and the other jurisdiction and no funds belonging to the member of the State Bar or firm of which he is a member shall be deposited therein or otherwise commingled therewith except as follows:

"(1) Funds reasonably sufficient to pay bank charges may be deposited therein.

"(2) Funds belonging in part to a client and in part presently or potentially to the member of the State Bar or firm of which he is a member must be deposited therein and the portion belonging to the member of the State Bar or firm of which he is a member must be withdrawn at the earliest reasonable time after the member's interest in that portion becomes fixed. However, when the right of the member of the State Bar or firm of which he is a member to receive a portion of trust funds is disputed by the client, the disputed portion shall not be withdrawn until the dispute is finally resolved."

[4]The additional finding states: "Notwithstanding the [default] judgment of the Municipal Court, Northern San Mateo County Judicial District, in *Alberton v.* [*C.*] (case no. 51478), the Review Department finds that [petitioner] is not entitled to a fee for his legal services in the [*C.*] matter in that he failed to act competently."

The review department recommended as a condition of probation that if petitioner recovers any money as a result of the default judgment, he shall promptly make full restitution of that money to the payor.

Petitioner contends that by making this finding, the review department acted as a Court of Appeal. He urges that this condition of probation not be imposed. The State Bar responds that the finding does not set aside the judgment of the municipal court, but determines only that petitioner failed to competently represent his client and, therefore, should not recover any fees.

The probation condition does not undo the lower court judgment. It simply requires pe-

## II.

Petitioner was admitted to the practice of law on June 20, 1950. He has been disciplined on three prior occasions resulting in two private reprovals[5] and one public reproval.[6]

In 1980, petitioner was a sole practitioner working out of his home in San Francisco. He practiced primarily in business and real estate law, although he occasionally handled criminal, family, personal injury and probate matters.

In May of 1980,[7] petitioner was retained by Rosalind C. (hereafter Ms. C.) to represent her in a criminal matter in Chico. Ms. C. had been arrested for issuing checks without sufficient funds. (Pen. Code, § 476a.) Petitioner and Ms. C. did not make any arrangements as to fees or reimbursement of expenses at that time.

In June, petitioner contacted the district attorney regarding Ms. C.'s case. The prosecutor agreed to charge the offense as a misdemeanor if Ms. C. would make full restitution. However, apparently no restitution was made by July, and on July 3rd, a felony complaint was filed.

On August 13th, Ms. C. was arraigned in municipal court. In accord with local practice, petitioner did not appear at the arraignment.[8] At the arraign-

---

titioner to make full restitution should that judgment be satisfied. Moreover, this court should have the power to impose discipline which encourages attorneys to act honestly and with integrity. The condition of probation does just that. It prevents petitioner from benefiting from his own wrongdoing.

[5]The State Bar's brief notes that these reprovals involved "misconduct consisting of a wilful failure to use reasonable diligence and his best judgment." Petitioner's brief describes these matters in a similar manner.

At oral argument, counsel for the State Bar noted that these reprovals involved conduct which occurred in 1973 and 1975. In one matter, petitioner apparently received $1,200 from a client to probate an estate and did nothing until the State Bar became involved. In the other matter, petitioner was retained to write a letter on behalf of his client to obtain benefits for his client's children. He failed to write the letter. In both matters, petitioner stipulated to the facts and recommended discipline.

[6]Petitioner has moved to augment the present record with the record in S.F. 2110—the disciplinary proceeding which resulted in a public reproval. He requests that this court strike the discipline finding in S.F. 2110 on the ground that he was "denied a fair hearing, could not meaningfully defend himself therein, and that the Committee which heard the same wholly lacked integrity."

The prior discipline in S.F. 2110, however, is not necessary to resolution of the present proceeding. Petitioner's offenses are serious enough to warrant discipline without relying on that particular record of prior discipline. Petitioner's augmentation request is therefore denied.

[7]Unless otherwise noted, all relevant events occurred in 1980.

[8]At the State Bar hearing, petitioner testified that he was not aware of the arraignment date and that Ms. C. had indicated to him that she could take care of it herself. However, Ms. C. testified that she had called petitioner one week before the arraignment and he had assured her that he would be present.

ment, Ms. C. pled not guilty and a preliminary hearing was set for August 21st.

At the State Bar hearing, Ms. C. testified that she informed petitioner of the preliminary hearing date and that he assured her he would be present. However, petitioner testified that he did not recall if he was informed of the date, but that in any event he did not think there would be a preliminary hearing because of his plea negotiations with the district attorney.

On August 21st, petitioner failed to appear for the hearing. Judge Rutherford, who was presiding in the case, telephoned petitioner to confirm the representation of Ms. C. After arranging a date that would be convenient with petitioner, the judge rescheduled the preliminary hearing for September 4th.

On September 4th, Ms. C. appeared for her preliminary hearing, but petitioner did not.[9] Ms. C. was upset by petitioner's absence and was concerned that she would lose her job if she had to make any further court appearances. Judge Rutherford then continued the preliminary hearing to September 11th and provided Ms. C. with a *"Mills* waiver form"[10] so that she would not have to appear personally if she wished to enter a guilty plea on that date.[11]

On September 11th, petitioner made his first appearance on behalf of Ms. C. He presented Judge Rutherford with Ms. C.'s completed *Mills* waiver form. However, the judge could not accept the plea because petitioner had filled out the form incorrectly.[12] The judge admonished petitioner and told him to return with a properly filled out waiver form on September 15th, a date petitioner selected.

On September 15th, petitioner failed to appear. At the State Bar hearing, petitioner testified that he had not been able to contact Ms. C. between

---

[9]Petitioner had earlier telephoned the court and asked the clerk for a continuance until Ms. C. had made restitution. He had also contacted the district attorney to have the matter continued, but was advised that only the court could grant continuances.

[10]The form is entitled "Defendant's Waiver of Constitutional Rights Before Entry of Plea." (See *Mills* v. *Municipal Court* (1973) 10 Cal.3d 288 [110 Cal.Rptr. 329, 515 P.2d 273].)

[11]At the September 4th proceeding, the district attorney had indicated that Ms. C. would be permitted to plead guilty to a misdemeanor, provided that she make restitution.

[12]Petitioner had listed the charge as a violation of Penal Code section 245 (assault with a deadly weapon), had failed to indicate whether the plea was nolo contendere or guilty, and had incorrectly indicated the maximum penalty for the charge.

Petitioner testified that he completed the *Mills* waiver form just before entering the courtroom on September 11th, and that he must have looked at the wrong line on the calendar in obtaining the Penal Code section to list on the form.

September 11th and 15th to have her sign the new waiver form. Apparently, there had been some confusion with another client which resulted in his decision not to go to Chico. He called the clerk to request a continuance. When petitioner failed to appear at the hearing, Judge Rutherford telephoned him. He explained that he had tried to contact the court for a continuance, and that he had been in court in the Bay Area that day.

As a result of petitioner's failure to appear, the judge issued a bench warrant for Ms. C. to retain jurisdiction. Also, an order to show cause re contempt was issued as to petitioner for his failure to appear. A hearing was set on the two matters for October 2nd.

On October 2nd, petitioner appeared before Judge Rutherford and was found in contempt. The judge suspended petitioner's sentence and referred the matter to the State Bar.[13]

On the same day, petitioner presented Ms. C.'s properly completed *Mills* waiver form to the court. The court accepted her plea of guilty and continued the case to October 30th for sentencing.

Sometime prior to October 2nd, petitioner had received $345.15 in cash from Ms. C. for the purpose of making restitution to Safeway where she had cashed the insufficient fund checks. At the October 2nd hearing, petitioner tendered Ms. C.'s restitution money to the district attorney but was told to pay Safeway directly. Since he anticipated that he would be able to tender payment in court, petitioner had not allotted sufficient time to go to Safeway that day.[14] After the hearing, petitioner flew to Los Angeles without making restitution. Petitioner thereafter placed the restitution money in his office safe.

At the State Bar hearing, petitioner testified that on October 3rd, he informed Ms. C. that he was going to reimburse himself $115 from the restitution money for travel expenses, and that she agreed to make up this amount. However, on two different occasions prior to the State Bar hearing, petitioner stated that he reimbursed himself for travel expenses *before* in-

---

[13]The referral resulted in the present disciplinary proceeding.

[14]At the State Bar hearing, Ms. C. testified that petitioner said he intended to pay Safeway *before* he appeared on October 2nd.

forming Ms. C. of such action.[15] Ms. C. testified that petitioner did tell her that she owed him for travel expenses, but never informed her that he would use part of her restitution money for that purpose. The hearing panel found that petitioner was not authorized to make that deduction and that he failed to discuss it with his client prior to making it.

On October 26th, Ms. C. went to petitioner's home. She requested the return of her money so that she could make the necessary restitution.[16] Petitioner then wrote a personal check to Safeway for $345. At the time he wrote the check, petitioner knew he did not have sufficient funds in his account to cover the check, but he intended to make a deposit before Ms. C.'s arrival at Safeway so that the check would be honored.

On October 27th, Ms. C. presented the check to the store manager at Safeway. The manager then called petitioner's bank and learned that there were insufficient funds to cover the check. He returned the check to Ms. C., threatened to have her rearrested, and then called petitioner. Petitioner promised to make a deposit later that afternoon or the following day.[17]

Although petitioner and Ms. C. disagreed as to whether petitioner ever informed her that the check would have to be covered prior to presentation, the hearing panel found that petitioner failed to cover the check before it was presented to Safeway.

---

[15]In the response to the State Bar's notice to show cause, petitioner stated: "I returned to San Francisco and the next day telephoned to Rosiland and *informed her* [¶] . . . (3) *that I had reimbursed myself for plane ($100) and taxi ($15) and she would have to add to the balance* which I would hold for her to pick up before she went to Oroville to the probation department." (Italics added.)

At the October 23, 1981, default judgment hearing in *Alberton* v. [*C.*] (see *ante*, fn. 4), petitioner testified: "I went to the court, tendered the money in the court which the District Attorney could not accept and said it had to be delivered to Chico, and I had an airline flight scheduled to leave Chico about 40 minutes later and so I returned *and in the process repaid to myself my air transportation and informed Rosiland of this immediately upon returning* and that she was going back and she would then replace the hundred and fifteen dollars that I had reimbursed to myself when the time came that she was going to Chico to see the Probation Officer." (Italics added.)

[16]The hearing panel found that on that day Ms. C. also told petitioner that she had not been able to raise the additional $115 to pay Safeway.

Petitioner argues that this finding conflicts with the panel's other finding that he was not authorized to make the deduction and did not discuss it with his client prior to making it. This argument lacks merit.

Petitioner's own statements establish that he reimbursed himself before discussing the matter with his client. (See *ante*, fn. 15.) The fact that Ms. C. told him that she had been unable to raise the $115 does not support the conclusion that she had authorized the deduction or discussed the matter with petitioner before he reimbursed himself.

[17]This statement conflicts with petitioner's previous testimony that his deposit would be made prior to Ms. C.'s arrival at Safeway.

On October 30th, prior to the sentencing hearing, petitioner made restitution to Safeway on behalf of Ms. C. and obtained a receipt from the store manager. He then appeared with Ms. C. at the hearing.

At the hearing, Judge McNelis presided in Judge Rutherford's place. Contrary to both petitioner's and Ms. C.'s expectations, Ms. C. was sentenced to 90 days in county jail and was ordered to surrender immediately. While it is unclear as to whether Judge McNelis was informed that restitution to Safeway had been made, it is undisputed that petitioner failed to present the Safeway receipt to the court.

While in custody, Ms. C. dismissed petitioner and obtained new counsel. The following day, Judge McNelis held a new sentencing hearing and reduced Ms. C.'s sentence to 20 days, apparently based on the fact that restitution had been made.

On October 23, 1981, petitioner obtained a default judgment against Ms. C. for $2,065 for fees and expenses in the criminal proceeding. (See *ante,* fn. 4.)

Based on these events, the hearing panel found that petitioner failed to (1) maintain a trust account and to place Ms. C.'s funds in such an account, (2) obtain her consent to reimbursement of travel expenses out of her restitution funds, and (3) keep intact a disputed portion of the funds delivered to him in trust. The hearing panel also concluded that petitioner failed to act competently and habitually sacrificed his client's interest and the demands of the court to his own personal schedule. The panel noted that "[his] 'mistakes' such as the Mills waiver form and the check drawn on insufficient funds were culpable failures to apply the skill and attention necessary to carry out the tasks for which he had been retained."[18]

### III.

■ This court must decide independently whether the hearing panel's findings are supported by the evidence. It is well established that the State Bar's findings are not binding on this court. Instead, this court must independently review the evidence, pass upon its sufficiency and resolve all reasonable doubts in favor of the attorney. (*Chefsky* v. *State Bar* (1984) 36 Cal.3d 116, 121 [202 Cal.Rptr. 349, 680 P.2d 82]; *Himmel* v. *State Bar* (1971) 4 Cal.3d 786, 793-794 [94 Cal.Rptr. 825, 484 P.2d 993].) ■

---

[18]As one factor in aggravation, the hearing panel noted that petitioner had "refused to acknowledge any wrongdoing in the present matter, and [had] engaged in lengthy and unusually vituperative attacks on each of the two State Bar Examiners who have participated in this matter."

However, the findings are entitled to great weight, and " '[w]hen the findings . . . rest primarily on testimonial evidence, we are reluctant to reverse the decision of the [hearing panel], which was in a better position to evaluate conflicting statements after observing the demeanor of the witnesses and the character of their testimony.' " (*Id.*, at p. 794; accord *Chefsky* v. *State Bar, supra,* 36 Cal.3d at p. 121.)

■ It is equally well settled that petitioner bears the burden of demonstrating that the findings of the State Bar are not supported by the evidence. (*Id.*, at p. 121; *Wren* v. *State Bar* (1983) 34 Cal.3d 81, 89-90 [192 Cal.Rptr. 743, 665 P.2d 515]; *Montag* v. *State Bar* (1982) 32 Cal.3d 721, 725 [186 Cal.Rptr. 894, 652 P.2d 1370]; *Himmel* v. *State Bar, supra,* 4 Cal.3d at p. 794.) "In meeting this burden, the petitioner must demonstrate that the charges of unprofessional conduct are not sustained by convincing proof and to a reasonable certainty." (*Ibid.*; accord *Chefsky* v. *State Bar, supra,* 36 Cal.3d at p. 121; *Wren* v. *State Bar, supra,* 34 Cal.3d at p. 90.)

■ In this case, petitioner has not carried that burden. The evidence clearly establishes that petitioner engaged in unprofessional conduct.

*Failure to Maintain Client Trust Account*

■ Petitioner asserts that since he did not handle client funds, it was unnecessary to maintain a client trust account as required by rule 8-101.

The record clearly establishes that petitioner violated rule 8-101. He received $345.15 from Ms. C. to be used solely to make restitution to Safeway. He held the funds from October 2nd through October 26th, and now admits that he did not deposit those funds in a trust account pursuant to rule 8-101. However, he steadfastly maintains that placing the funds in his office safe was sufficient.[19]

Rule 8-101 requires that "[a]ll funds received or held for the benefit of clients" shall be deposited in an identifiable client trust account. That rule is violated "merely by an attorney's commingling of his clients' money with his own, or by his failure to deposit and manage such money in the manner designated by the rule even if no person is injured." (*Jackson* v. *State Bar* (1979) 25 Cal.3d 398, 404 [158 Cal.Rptr. 869, 600 P.2d 1326]; see also *Vaughn* v. *State Bar* (1972) 6 Cal.3d 847, 858 [100 Cal.Rptr. 713, 494 P.2d 1257]; *Zitny* v. *State Bar* (1966) 64 Cal.2d 787, 792-793 [51 Cal.Rptr.

---

[19]Petitioner asserts that he did not deposit Ms. C.'s funds into a trust account because the funds were to be delivered to Safeway in cash. Ironically, petitioner eventually gave his client *a check*—from an account with insufficient funds—to present to Safeway for restitution purposes.

825, 415 P.2d 521].) Petitioner's actions were insufficient to comply with these requirements.

*Misappropriation of Client Funds*

█ Petitioner argues that he did not misappropriate client funds, but merely attempted "to advance funds to the client to assist her." This argument lacks merit.

It is clear that petitioner reimbursed himself for travel expenses before informing his client.[20] The funds from which he reimbursed himself had been entrusted to him by Ms. C. for the sole purpose of making restitution to Safeway. █ The fact that petitioner subsequently restored those funds when restitution was finally made does not absolve him of the misconduct.[21]

*Failure to Act Competently*

█ Lastly, petitioner contends that he did not fail to act competently and use reasonable diligence, since he obtained a relatively light sentence on a felony charge for his client.

The record does not support petitioner's contention. It was another attorney, and not petitioner, who persuaded the court to grant Ms. C. a new sentencing hearing and modify her sentence from 90 days to 20 days. When petitioner represented Ms. C. at the October 30th sentencing hearing—his last appearance on her behalf—he failed to provide the judge with evidence that restitution had been made despite the fact that he had such evidence in his possession.

However, even assuming Ms. C.'s 20-day sentence was the result of petitioner's efforts, his conduct throughout the case demonstrated a marked lack of diligence. On numerous occasions, petitioner failed to appear for scheduled court hearings without notice to Ms. C. or the court. The Sep-

---

[20]See *ante*, footnote 15.

[21]Petitioner also challenges the finding that he withdrew a disputed portion of funds delivered to him in trust without Ms. C.'s consent before the dispute was resolved. (Cf. rule 8-101(A)(2), see *ante*, fn. 3.)

Petitioner's challenge to the rule 8-101(A)(2) finding has technical merit. Since it is clear that petitioner withdrew the money before informing his client, the funds at that point could not have been "disputed." In addition, the funds taken by petitioner were not "trust funds" within the meaning of rule 8-101(A)(2) because they were not contained in an identifiable client trust account. Thus, this finding should be set aside. However, this conclusion in no way undermines the fact that a misappropriation did occur, which in and of itself is a ground for discipline.

tember 15th failure to appear was particularly egregious, since petitioner had selected the date and assured the court of his availability. His failings in this regard displayed an indifference to the obligations owed Ms. C. and evidenced a failure to act competently. Moreover, petitioner's inability to correctly fill out the *Mills* waiver form, after being apprised of his client's absence on the date scheduled for acceptance of the plea, demonstrated a failure to use reasonable diligence under rule 6-101.

Finally, petitioner failed to cover the check before Ms. C. presented it to Safeway. By such conduct, petitioner jeopardized his client. This court has held that such a practice "manifests an abiding disregard of ' " 'the fundamental rule of ethics—that of common honesty—without which the profession is worse than valueless in the place it holds in the administration of justice.' " ' [Citations.]" (*Hamilton* v. *State Bar* (1979) 23 Cal.3d 868, 876 [153 Cal.Rptr. 602, 591 P.2d 1254].)

This conduct, as a whole, more than supports the panel's finding that petitioner's actions constituted a failure to apply the skill and attention necessary to carry out the tasks for which he had been retained.

IV.

The hearing panel and the review department differed in their recommendations as to discipline. The panel recommended a three-year probationary period with ninety days actual suspension, while the review department recommended a five-year probationary period with one-year actual suspension. (See *ante,* fn. 1 and accompanying text.) The review department concluded that the increased discipline was warranted in view of petitioner's misappropriation of funds, conduct prejudicial to his client, the existence of a prior record of discipline and the absence of mitigating evidence.

■ In determining the discipline to be imposed, "the review department's recommendation is to be accorded greater weight than the hearing panel's." (*Wren* v. *State Bar, supra,* 34 Cal.3d at p. 90; accord *Goldman* v. *State Bar* (1977) 20 Cal.3d 130, 140 [141 Cal.Rptr. 447, 570 P.2d 463].) And, although the ultimate decision on discipline rests with this court (*Garlow* v. *State Bar* (1982) 30 Cal.3d 912, 916 [180 Cal.Rptr. 831, 640 P.2d 1106]; *Jackson* v. *State Bar* (1979) 23 Cal.3d 509, 514 [153 Cal.Rptr. 24, 591 P.2d 47]), the review department's recommendation is entitled to great weight. (*Hamilton* v. *State Bar, supra,* 23 Cal.3d at p. 878.)

■ In deciding what discipline is warranted, each case must be decided on its own facts. There are no fixed standards as to the appropriate penalty. (*Olguin* v. *State Bar* (1980) 28 Cal.3d 195, 200 [167 Cal.Rptr. 876, 616

P.2d 858]; *Doyle* v. *State Bar* (1976) 15 Cal.3d 973, 978 [126 Cal.Rptr. 801, 544 P.2d 937].) "Our principal concern is always the protection of the public, the preservation of confidence in the legal profession, and the maintenance of the highest possible professional standard for attorneys." (*Jackson* v. *State Bar, supra,* 23 Cal.3d at p. 514.)

 Petitioner's unprofessional conduct is well supported by this record. He violated rule 8-101 when he failed to deposit Ms. C.'s funds in an identifiable client trust account. This court has noted that any violation of that rule's mandate is subject to discipline. (See *Vaughn* v. *State Bar, supra,* 6 Cal.3d at pp. 858-859.)

Petitioner also misappropriated client funds when he reimbursed himself for travel expenses without first obtaining his client's consent. Misappropriation is a serious offense which involves moral turpitude. (*Chefsky* v. *State Bar, supra,* 36 Cal.3d at p. 124; *Persion* v. *State Bar* (1973) 9 Cal.3d 456, 462 [107 Cal.Rptr. 708, 509 P.2d 524].) Moreover, since it is likely to undermine the public's confidence in the legal profession, it merits severe punishment. (*Greenbaum* v. *State Bar* (1976) 15 Cal.3d 893, 905 [126 Cal.Rptr. 785, 544 P.2d 921]; *Yokozeki* v. *State Bar* (1974) 11 Cal.3d 436, 450 [113 Cal.Rptr. 602, 521 P.2d 858].) This court has repeatedly held that the misappropriation of client funds warrants disbarment in the absence of extenuating circumstances. (*Athearn* v. *State Bar* (1977) 20 Cal.3d 232, 237 [142 Cal.Rptr. 171, 571 P.2d 628]; *Persion* v. *State Bar, supra,* 9 Cal.3d at p. 462; *Sevin* v. *State Bar* (1973) 8 Cal.3d 641, 646 [105 Cal.Rptr. 513, 504 P.2d 449].) Therefore, a one-year actual suspension is not excessive.

Petitioner also failed to act competently throughout his representation of Ms. C. His failure to use reasonable diligence and sound judgment, by itself, warrants discipline. (See *Olguin* v. *State Bar, supra,* 28 Cal.3d at pp. 198-199.) "[W]illful failure to perform legal services for which an attorney has been retained in itself warrants disciplinary action, constituting a breach of the good faith and fiduciary duty owed by the attorney to his clients. [Citations.]" (*Lester* v. *State Bar* (1976) 17 Cal.3d 547, 551 [131 Cal.Rptr. 225, 551 P.2d 841].) Even if an attorney's misconduct is not willful and dishonest, gross carelessness and negligence constitute a violation of the oath of an attorney to faithfully discharge his duties. (*Jackson* v. *State Bar, supra,* 23 Cal.3d at p. 513; *Doyle* v. *State Bar, supra,* 15 Cal.3d at p. 978; *Simmons* v. *State Bar* (1970) 2 Cal.3d 719, 729 [87 Cal.Rptr. 368, 470 P.2d 352].)

 Each of the violations committed by petitioner warrants a separate and independent disciplinary response. Where the offenses are

"committed in concert, substantial discipline is warranted." (*Davis* v. *State Bar* (1983) 33 Cal.3d 231, 240-241 [188 Cal.Rptr. 441, 655 P.2d 1276].)

 In addition, petitioner offered no evidence of mitigation, failed to acknowledge any wrongdoing, and did not demonstrate any remorse for his conduct. An attorney's attitude toward disciplinary proceedings may properly be considered when deciding on the appropriate sanction. (*Yokozeki* v. *State Bar, supra,* 11 Cal.3d at p. 451; see also *Grove* v. *State Bar* (1967) 66 Cal.2d 680, 684 [58 Cal.Rptr. 564, 427 P.2d 164].)

 Finally, the two private reprovals may properly be considered.[22] (*Davis* v. *State Bar, supra,* 33 Cal.3d at p. 241; *Hamilton* v. *State Bar, supra,* 23 Cal.3d at p. 879; *Lewis* v. *State Bar* (1973) 9 Cal.3d 704, 715 [108 Cal.Rptr. 821, 511 P.2d 1173].) While these reprovals resulted from conduct which occurred over 10 years ago, they involved conduct similar to that found here. (See *ante,* fn. 5.) This court has noted that repetitive misconduct warrants severe discipline. (See *Davis* v. *State Bar, supra,* 33 Cal.3d at p. 241.)

 In view of the foregoing, there is ample evidence to support the review department's recommendation.

Accordingly, petitioner is suspended from the practice of law for five years. Execution of the order of suspension is stayed, and petitioner is placed on probation for five years with conditions of probation to include actual suspension for the first year. Petitioner is ordered to comply with the other conditions of probation set forth in the review department's order, and to take and pass the Professional Responsibility Examination within the period of his actual suspension. Petitioner is ordered to comply with rule 955 of the California Rules of Court, and to perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days, respectively, after the effective date of this order. This order is effective 30 days after the filing of this opinion.

---

[22]Petitioner now seeks to offer evidence in mitigation regarding these reprovals. However, those orders have long been final, and this court will not reconsider them now.