[L.A. No. 31896. Sept. 24, 1984.]

MITCHELL BARRY SMITH, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

**COUNSEL**

Mitchell Barry Smith, in pro. per., and Howard E. Blumenthal for Petitioner.

Herbert M. Rosenthal, Truitt A. Richey, Jr., and Scott J. Drexel for Respondent.

## OPINION

**THE COURT.**—This is a proceeding to review the recommendation of the State Bar that petitioner, Mitchell Barry Smith, be suspended from the practice of law for four years, that execution of the suspension be stayed, and that he be placed on probation for four years. The recommended conditions of probation include actual suspension for one year and compliance with rule 955, California Rules of Court.

Petitioner does not contest the hearing panel's factual findings, which were adopted by the review department. However, petitioner argues that the review department failed to consider certain mitigating factors. He also contends that the recommended discipline is excessive. Petitioner asks this court to impose a lesser period of stayed suspension, to eliminate the actual suspension, and to excuse compliance with rule 955.

### I.

Petitioner, who was admitted to the California State Bar in 1966, was accused of four separate acts of misconduct. The allegations included three charges of misappropriating client funds and one charge of wilfully failing to perform services for which he was employed.

Prior to the proceedings before the hearing panel, petitioner signed a stipulation in which he admitted misappropriating client funds in two of the incidents charged. At the hearing, petitioner presented his version of the events but he did not dispute any of the charges. Instead, he admitted wrongdoing and offered evidence in mitigation. Similarly, in this court petitioner does not contest the findings of wrongdoing. Therefore, this court accepts the facts as found by the hearing panel and adopted by the review department.

The panel found that in 1978 petitioner settled a personal injury case on behalf of a minor plaintiff, Ms. N. The settlement order provided that within 48 hours of receipt of the settlement drafts, petitioner would deposit $3,000 of the proceeds into a trust account held by plaintiff's guardian ad litem. Petitioner received the drafts in August 1978. Instead of complying with the settlement order, he deposited the drafts into his general client trust fund account. Petitioner neither made the required deposit into plaintiff's account, nor communicated with plaintiff's guardian ad litem. He did not make restitution until July 1980 after his client had filed a lawsuit seeking recovery of the funds and the State Bar had commenced its investigation. At his State Bar hearing petitioner stipulated that he had misappropriated the funds to his own use.

The panel also found that petitioner misappropriated funds he received in connection with his representation of Mr. A. in a personal injury matter. In December of 1977, petitioner received a check for $1,000 in settlement of Mr. A.'s claim. Petitioner and Mr. A. agreed that the check would be used, in part, to pay Mr. A.'s medical bills. Mr. A. mistakenly believed that the $1,000 was only a partial settlement of his claim.

After Mr. A. endorsed the check, petitioner converted it to a cashier's check. Without Mr. A.'s knowledge or consent, petitioner then signed over the check to an old client and friend who was not involved in the case. Although petitioner did pay one of Mr. A.'s medical bills in February of 1979, Mr. A. was forced to pay the other bill after his wife's salary was garnisheed.

Mr. A. received no part of the $1,000 settlement. Petitioner neither returned Mr. A.'s numerous calls nor provided him with an accounting. At the hearing, petitioner admitted to wrongdoing in the matter, but was unsure how much, if anything, he still owed Mr. A. The hearing panel found that Mr. A. was entitled to $440.

Petitioner's third act of misconduct involved two personal injury actions filed on behalf of Mr. S. The actions were settled in late 1977 and early 1978 for a total of $13,500. Mr. S. received $4,650. Petitioner retained the rest of the money to pay his own fees and expenses and to pay Mr. S.'s medical bills. However, petitioner did not pay any medical bills and did not return the funds retained for that purpose. Petitioner stipulated that he had misappropriated Mr. S.'s funds to his own use. The hearing panel and the review department agreed.

Petitioner's last act of misconduct also involved representation of Mr. S. In April of 1978, Mr. S. was fired from his job for refusing to take a lie detector test after he was accused of stealing money from his employer. Petitioner agreed to represent Mr. S., but never filed a complaint or informed Mr. S. that he had not done so. In addition, petitioner failed to inform Mr. S. of the date on which the statute of limitations would run.

At the proceedings before the hearing panel, petitioner claimed he never told Mr. S. that he had filed the complaint. However, he conceded that Mr. S. "probably had the impression I was going to file it . . . ." Petitioner explained that he had drafted a complaint, but never filed it because he believed the claim lacked merit. In addition, he never intended to file the complaint unless Mr. S. advanced the filing fee. The hearing panel found that petitioner failed to use reasonable diligence and his judgment, skill, and

learning "to accomplish with reasonable speed the purpose for which he was employed . . . ."

## II.

Petitioner did not contest the charges before the hearing panel. Instead, he offered testimony in mitigation. Petitioner testified that during the two-year period in which the misconduct occurred, he suffered serious financial, psychological, and general health problems.

Petitioner testified that in 1973 he was diagnosed as having myasthenia gravis, an incurable muscular condition primarily affecting the eyes. Petitioner often had double vision and had to wear a patch over one eye. His condition caused him to tire easily and to experience occasional dizziness. The condition was exacerbated by fatigue, stress, and alcohol.

Nevertheless, petitioner enjoyed a flourishing practice until mid-1977 when he began to manage a mobile telephone company (Comfac) that he owned with a friend and fellow attorney. Petitioner had owned the business only a few months when the manager informed him that it was deeply in debt. Petitioner and his partner soon found that they could no longer afford to employ a manager, and petitioner spent increasing amounts of time managing the business. As a result, he neglected his law practice.

When Comfac went out of business in September of 1977 petitioner lost a good deal of money and was forced to move his law practice to smaller quarters. In addition, he fell behind in his tax payments and was forced to sell his home.

Petitioner's personal life was also in turmoil. His father and grandmother died in January of 1977. After Comfac collapsed, petitioner began to drink heavily. His marriage deteriorated.

Petitioner's financial reverses continued into 1979 as he moved to smaller and smaller offices and eventually began practicing from his home. His cars were repossessed. In 1980 petitioner separated from his wife.

The hearing panel found that petitioner had violated his duties under Business and Professions Code[1] section 6103 as prescribed by sections 6067 and 6068, and that he had wilfully violated rules 6-101 and 8-101 of the Rules of Professional Conduct. In determining the appropriate discipline, certain

---

[1] All statutory references are to the Business and Professions Code unless otherwise indicated.

factors in mitigation were considered. Specifically, the hearing panel relied on the fact that petitioner: (1) had no prior disciplinary record; (2) was experiencing emotional, family and financial difficulties at the time of his misconduct; and (3) had made full restitution to Ms. N., the minor plaintiff, before institution of formal disciplinary proceedings. The hearing panel unanimously recommended four years stayed suspension, probation for four years, and forty-five days actual suspension. The panel also recommended that petitioner be excused from compliance with rule 955.

The review department adopted the panel's factual findings, but made its own findings in mitigation. The review department found that:

"1. During the period of time in question, Respondent was suffering from myasthenia gravis, an incurable nervous disorder which affected his inability [sic] to function effectively.

"2. In early 1977, Respondent lost his father and his grandmother, both of whom had been very close to him.

"3. In 1977 and 1978, a mobile telephone business in which Respondent had invested as a general partner became insolvent. This caused Respondent to lose his house and car through foreclosure. His law practice was likewise adversely affected.

"4. As a result of his financial problems, Respondent separated from his wife and children and suffered emotional problems.

"5. Respondent expressed remorse for his actions and is on the way to successful rehabilitation.

"6. Respondent has no prior record of discipline."

Despite its more extensive mitigation findings, the review department recommended harsher discipline than that recommended by the hearing panel. It recommended, inter alia, that petitioner be suspended for four years, that the suspension be stayed, and that the terms of probation include one year actual suspension in addition to compliance with rule 955.

### III.

Petitioner contends that both the hearing panel and the review department failed to consider the following mitigating factors: (1) petitioner is a capable lawyer; (2) he was drinking heavily throughout the relevant period; (3) he had tax problems; (4) he is an honorable and trustworthy

person; (5) he taught "with distinction" at a California law school; and (6) he has performed pro bono legal services.

■ It is well settled that petitioner has the burden of proving that the review department's findings are not supported by the evidence. (§ 6083, subd. (c); *Ramirez* v. *State Bar* (1980) 28 Cal.3d 402, 411 [169 Cal.Rptr. 206, 619 P.2d 399].) ■ Petitioner has not met this burden.

Petitioner's assertion that he is a capable lawyer was supported by the testimony of two of his friends. However, petitioner does not indicate why his alleged skill as a lawyer mitigates his wrongdoing. Similarly, petitioner's testimony that he taught for one year at a local law school does not excuse or explain his conduct. (Cf. *McMorris* v. *State Bar* (1983) 35 Cal.3d 77, 84 [196 Cal.Rptr. 841, 672 P.2d 431] [attorney's literary contributions do not excuse his misconduct].)

Petitioner claims that his tax problems should have been considered in mitigation. However, the review department presumably considered this factor when it found that petitioner had financial problems that resulted in the loss of his home and car.

Petitioner also contends that his heavy drinking should have been considered. ■ Alcoholism and subsequent rehabilitation may be considered in determining appropriate discipline. (*In re Cohen* (1974) 11 Cal.3d 935, 943 [114 Cal.Rptr. 611, 523 P.2d 651].) ■ However, neither petitioner nor his witnesses claimed that he was an alcoholic. Petitioner's two friends testified that he was drinking heavily during the relevant period. Nevertheless, one friend specifically noted that he had never seen petitioner drunk. It does not appear that petitioner's drinking problem was serious enough to require treatment.

Petitioner's contention that he is a trustworthy and honorable person is similarly unsupported. Again, petitioner's two friends testified that they believed him to be honest and trustworthy. However, petitioner's admitted misappropriation of his clients' funds belies those assertions.

As to the mitigating effect of the alleged pro bono work, petitioner's argument is unavailing. He does not claim to have devoted significant time to pro bono cases or projects. The only evidence presented on this subject was petitioner's assertion that he "spent as much as three weeks in trial in pro bono work earlier in [his] career."

In sum, petitioner has not demonstrated that the review department's failure to make the findings discussed above was in error.

■ Petitioner also seeks modification of the review department's recommended discipline. He does not argue, however, that the hearing panel imposed the appropriate discipline. Instead, he seeks a lesser period of probation than the four years recommended by both the panel and the department. He also asks that he be given no actual suspension. The hearing panel recommended 45 days of actual suspension and the review department recommended a year.

■ Although this court exercises its independent judgment in determining the appropriate discipline, it gives great weight to the disciplinary recommendation of the State Bar. (*Yokozeki* v. *State Bar* (1974) 11 Cal.3d 436, 450 [113 Cal.Rptr. 602, 521 P.2d 858].) ■ It is axiomatic that petitioner bears the burden of demonstrating that the State Bar's recommendation is erroneous. (*Garlow* v. *State Bar* (1982) 30 Cal.3d 912, 916 [180 Cal.Rptr. 831, 640 P.2d 1106]; *Yokozeki* v. *State Bar, supra,* 11 Cal.3d at p. 450.) ■ Petitioner has not met this burden.

■ Petitioner's failure to render services for which he was employed constitutes a breach of fiduciary duty and warrants disciplinary action. (*Finch* v. *State Bar* (1981) 28 Cal.3d 659, 665 [170 Cal.Rptr. 629, 621 P.2d 253]; see also *Davis* v. *State Bar* (1983) 33 Cal.3d 231, 240-241 [188 Cal.Rptr. 441, 655 P.2d 1276].) ■ Moreover, misappropriation of client funds is an act of serious misconduct involving moral turpitude. (*Bate* v. *State Bar* (1983) 34 Cal.3d 920, 923 [196 Cal.Rptr. 209, 671 P.2d 360].) Absent a showing of mitigating factors, disbarment is appropriate. (*Finch* v. *State Bar, supra,* 28 Cal.3d at p. 665.)

■ Petitioner has demonstrated a number of mitigating factors. Petitioner's illness, personal problems, and financial difficulties are appropriate considerations in determining discipline. (*In re Jones* (1971) 5 Cal.3d 390, 400-401 [96 Cal.Rptr. 448, 487 P.2d 1016]; *Bradpiece* v. *State Bar* (1974) 10 Cal.3d 742, 747 [111 Cal.Rptr. 905, 518 P.2d 337]; *In re Cohen, supra,* 11 Cal.3d at p. 943.) In addition, petitioner has no prior disciplinary record. (See *Bradpiece* v. *State Bar, supra,* 10 Cal.3d at p. 747.) He cooperated fully with the investigation and expressed both remorse and his intent to avoid future misconduct. (See *Demain* v. *State Bar* (1970) 3 Cal.3d 381, 388 [90 Cal.Rptr. 420, 475 P.2d 652]; *Bradpiece* v. *State Bar, supra,* 10 Cal.3d at p. 748.) Moreover, the review department found that petitioner is "on his way to successful rehabilitation."

However, "even considering mitigating circumstances on behalf of Respondent," the review department found that "the degree of discipline recommended by the Hearing Panel was insufficient." Petitioner seeks even less discipline than that recommended by the panel. Yet, in light of the

number and severity of his offenses, petitioner has failed to show that the review department's recommended discipline will not serve this court's goals of protecting the public, preserving confidence in the legal profession, and maintaining high professional standards. (See *Jackson* v. *State Bar* (1979) 23 Cal.3d 509, 514 [153 Cal.Rptr. 24, 591 P.2d 47].)

Accordingly, this court adopts the disciplinary recommendation of the State Bar. Petitioner is suspended from the practice of law for four years. Execution of this order is stayed. Petitioner is placed on probation for four years under the conditions of probation contained in the review department's resolution of December 2, 1983, including, inter alia, actual suspension for one year and compliance with rule 955. This order is effective 30 days after the filing of this opinion.