[No. S007188. Apr. 17, 1989.]

JUAN HIPOLITO, Petitioner, v.

THE STATE BAR OF CALIFORNIA, Respondent.

COUNSEL

Tom Low for Petitioner.

Diane C. Yu, Truitt A. Richey, Jr., Richard Zanassi and Mara Mamet for Respondent.

OPINION

THE COURT.—We examine the recommendation of the Review Department of the State Bar Court (hereafter the department) that petitioner Juan Hipolito be suspended from the practice of law in California for five years, that execution of the suspension be stayed and that he be placed on probation for five years on specified conditions including actual suspension for two years. Because the department erred in rejecting significant mitigating factors found by the hearing panel (hereafter the panel), we conclude the department's recommended discipline is excessive and choose to modify it. As will be explained, we believe that a three-year suspension, execution stayed, and a three-year probation including a one-year actual suspension, is sufficient to protect the public, the profession and the courts.

## I. FACTS

The facts, as stipulated to by the parties (rules 405-408, Rules Proc. of State Bar), are as follows: Petitioner was admitted to the practice of law in this state on May 31, 1979. He has no prior record of discipline.

Petitioner is charged in two separate matters with (1) commingling and misappropriating money belonging to a client and (2) abandoning a client. In the first matter (hereafter count one), petitioner represented Juan Castaneda in a marriage dissolution action. Pursuant to a settlement agreement, petitioner was to receive $2,575.87 on behalf of his client from the proceeds realized from the sale of a community property home. Of the total sum, the

client was entitled to $2,000 and petitioner was entitled to the difference as partial payment of attorney's fees. On April 26, 1985, petitioner accepted from opposing counsel a check in the amount of $2,575.87 payable to himself and his client. Petitioner drafted a check for $2,000 on his general account payable to his client and deposited the settlement check in his general account. When the $2,000 check was presented for payment on May 9, 1985, it was returned because of insufficient funds. The client made several attempts to receive his $2,000 from petitioner but was not paid until 13 months later on June 10, 1986.

The stipulated facts also include the following facts to which petitioner would have testified if called at the State Bar hearing. When petitioner gave the $2,000 check to his client, he believed his account would have sufficient funds to cover the check because he had made arrangements with a friend to borrow $30,000. This friend told petitioner she had already sent him a check for $30,000 but, in fact, she had not. Petitioner offered to make payments to the client, but the client demanded the entire amount. Petitioner deposited the settlement check in his general account in the belief the entire amount belonged to him because he had tendered the $2,000 check to his client.

In the second matter (hereafter count two), petitioner represented Miguel Castaneda and filed a civil suit on his behalf in municipal court on April 14, 1983. Petitioner was unsuccessful in his attempts to obtain a default judgment and thereafter was served with a cross-complaint against his client. Petitioner failed to notify his client of the cross-complaint and to file a response thereto, and eventually the cross-complainant obtained a default judgment against the client in the amount of $2,999.11. In October 1985, the client employed another attorney who was able to negotiate a settlement whereby in exchange for dismissal of the default on the cross-complaint, the client dismissed the complaint against the defendant/cross-complainant.

At the time of the incidents described above, petitioner encountered severe financial difficulties and filed for bankruptcy in August 1986. He assigned all his accounts receivable to the Internal Revenue Service, but did not attempt to discharge the debt to Juan Castaneda. He was also involved in a very bitter and protracted dissolution of his marriage. He was hospitalized in June 1986 because of severe chest pains caused by stress. Apparently during the period following the filing of the bankruptcy petition, petitioner hired a management company to perform the bookkeeping, billing and disbursement functions of his law office. He has been an active member of the community and several community organizations, and has taken many clients on a no fee or greatly reduced fee basis.

## II. Disciplinary Proceedings

The State Bar's notice to show cause was filed on August 6, 1987. The panel accepted the parties' stipulation of facts and, after hearing brief testimony from petitioner and the argument of counsel, ordered the matter submitted. In its decision filed February 24, 1988, the panel found that, in regard to count one, petitioner wilfully violated rule 8-101(A) of the Rules of Professional Conduct by failing to deposit funds received for the benefit of his client in a trust account.[1] It also found that petitioner violated rule 8-101(B)(4) by failing to promptly pay the client the money owed him but concluded that the violation was not wilful "because of [petitioner's] reasonable expectation that his personal check to the client would be honored at or about the time that it was given, and [because of petitioner's] subsequent inability to pay." As to count two, it found petitioner wilfully violated rule 2-111(A)(2) by failing to perform services for or communicate with his client.

In aggravation, the panel found petitioner's misconduct significantly harmed two clients; however, in mitigation, it found: (1) petitioner had no prior discipline during eight years of practice; (2) he was spontaneously candid and cooperative with the victims of his misconduct and the State Bar; (3) he made an extraordinary demonstration of good character through his extensive public service as set forth in the stipulation and by three letters received in evidence at the hearing; (4) he demonstrated good faith; and (5) by hiring a management firm and acknowledging his obligation to his client in count one, he spontaneously demonstrated remorse and recognition of wrongdoing. The panel recommended petitioner be suspended from the practice of law for three years, that execution of the suspension be stayed, and that he be placed on probation for three years on conditions including six months' actual suspension.

The department adopted part of the panel's findings of fact and conclusions. It rejected, however, the conclusion that petitioner's failure to make prompt payment in count one was not wilful and substituted a finding that the violation of rule 8-101(B)(4) was wilful, constituted a misappropriation of funds and involved moral turpitude. It also rejected, without explanation, mitigating factors (4) and (5) found by the panel. Finally, it increased the recommended discipline to five years' suspension, execution stayed, and five years' probation with two years' actual suspension. The vote of the department was nine to three with two of the majority noting that while petitioner's misconduct would warrant disbarment, they felt constrained by our

---

[1] Unless otherwise noted, all further regulatory references are to the Rules of Professional Conduct.

decision in *Lawhorn v. State Bar* (1987) 43 Cal.3d 1357 [240 Cal.Rptr. 848, 743 P.2d 908], to recommend more lenient discipline. The three dissenters recommended stricter but unspecified discipline.

## III. DISCUSSION

█ Petitioner concedes he is culpable of misconduct and should be disciplined, but contends the discipline recommended by the department is excessive. He argues that the department failed to consider all relevant mitigating factors when it rejected the panel's findings regarding the expected $30,000 loan, his financial difficulties, the engagement of a management firm, his acknowledgment of his obligations to his client, and the steps he took to recognize and remedy his problems. █ He correctly notes that protection—of the public, the profession and the courts—not punishment, is the primary purpose of attorney discipline and we therefore must consider all applicable mitigating and aggravating circumstances. (*In re Nadrich* (1988) 44 Cal.3d 271, 276 [243 Cal.Rptr. 218, 747 P.2d 1146].) Nevertheless, petitioner did not proffer his testimony regarding the unmaterialized loan as a mitigating factor but instead to support his contention that he simply commingled funds and did not misappropriate them. █ The department correctly concluded that petitioner's failure to deposit the funds in a client trust account and to repay the client for a period of 13 months constitutes wilful misappropriation, a conclusion petitioner does not here challenge. The panel's reference to the loan testimony was therefore irrelevant to the department's legal conclusion and was properly rejected.

We are concerned, however, by the department's unexplained rejection of the panel's finding that petitioner demonstrated remorse, particularly because that fact was stipulated to by the parties. (Cf. *In re Strick* (1987) 43 Cal.3d 644, 656 [238 Cal.Rptr. 397, 738 P.2d 743] [finding no apparent reason to discount evidence presented to hearing panel or to delete its findings, as did review department].) █ That an attorney "display[s] candor, cooperation and remorse throughout the disciplinary proceedings, and a willingness to accept punishment and to rehabilitate himself" may be a significant mitigating factor. (*Bradpiece v. State Bar* (1974) 10 Cal.3d 742, 748 [111 Cal.Rptr. 905, 518 P.2d 337].) Similarly, the panel found by clear and convincing evidence that petitioner "acknowledged his obligation to the client in Count I and timely atoned, considering his own financial difficulties, [and] . . . engaged a management firm to . . . avoid difficulties resulting in his misconduct under both Count I and Count II." Again, the department deleted the finding without explanation. █ █ █ █
█ We, however, believe the finding is a significant mitigating factor

because it supports the conclusion that the public would be protected by a shorter period of actual suspension.[2]

The State Bar relies heavily on *Lawhorn, supra,* 43 Cal.3d 1357, in which a relatively inexperienced attorney misappropriated $1,355.75 from one of his clients. In response to the client's demand for the money, the attorney initially said that his wife had placed a freeze on his client trust account as part of divorce proceedings between the two, when in fact no freeze was ever sought or imposed. The client left numerous unanswered telephone messages for the attorney, and it was only after the client threatened to complain to the State Bar that he returned the misappropriated funds. During the disciplinary proceedings, the attorney claimed he placed $1,100 of the funds he withdrew from the client trust fund and enough "other cash" to make up the amount due the client in a "stash box" in his refrigerator. We rejected the recommendation of the panel and the department to disbar the attorney and instead suspended him for five years, execution stayed, with two years' actual suspension.[3]

While there are certain factual similarities between the present case and *Lawhorn,* we find two distinguishing factors important. First, we generously characterized Lawhorn's claim that he stashed the cash in his refrigerator and did not use it for his personal needs as "not implausible," in accordance with the rule that all reasonable doubts are to be resolved in favor of the attorney (43 Cal.3d at p. 1367); nevertheless, it is clear that he lied to his client regarding the purported freeze on the client trust fund (see std. 2.3,

---

[2] Cooperating with the State Bar's disciplinary investigation is, of course, a legal and ethical duty (Bus. & Prof. Code, § 6068, subd. (i)) and, in and of itself, is not entitled to great weight as a mitigating factor. Similarly, expressing remorse for one's misconduct is an elementary moral precept which, standing alone, deserves no special consideration in determining the appropriate discipline. Nevertheless, the combination of cooperating with the State Bar, demonstrating remorse and accepting responsibility for one's wrongdoing, and taking steps to repair the damage done and to prevent its recurrence must be considered if the sanction we impose is to serve any but a punitive goal.

[3] The State Bar argues that petitioner's misconduct is somewhat more egregious than the misconduct in *Lawhorn, supra,* 43 Cal.3d 1357, because the amount misappropriated is greater ($2,000 as compared to $1,355), the time to repay is longer (13 months as compared to 5 months), and he abandoned a client in addition to misappropriating funds. The difference in the amounts misappropriated is de minimis, as is the disparity in repayment periods when viewed in light of petitioner's financial difficulties, his immediate acknowledgment of the debt and his offer to make payments to the client. The abandonment appears to have resulted from the same forces leading to the misappropriation, namely, petitioner's poor management skills. (Cf. *Chefsky* v. *State Bar* (1984) 36 Cal.3d 116, 132 [202 Cal.Rptr. 349, 680 P.2d 82] [attorney's illness "undoubtedly compounded the difficulties he encountered maintaining a law practice consisting mainly of low-fee cases"].) Petitioner's engagement of a management firm is not only a recognition of the seriousness of the misconduct and an acceptance of responsibility therefor, it is, as the panel found, an objective step taken to avoid misconduct in the future.

Stds. for Atty. Sanctions for Prof. Misconduct (Rules Proc. of State Bar, div. V) (hereafter standards) [requiring actual suspension or disbarment for attorney who is intentionally dishonest toward a client]). In this case, petitioner immediately acknowledged the debt to his client and offered to make payments. (*Waysman* v. *State Bar* (1986) 41 Cal.3d 452, 458 [224 Cal.Rptr. 101, 714 P.2d 1239].) Moreover, he did not try to avoid his client, as did Lawhorn. (*Lawhorn, supra,* 43 Cal.3d at p. 1361.) Second, there is no indication in the record that petitioner's client threatened to complain to the State Bar before petitioner sent him his money. █ "Restitution made voluntarily and before the commencement of disciplinary proceedings is entitled to consideration as a mitigating factor." (*Id.,* at p. 1366.) In *Lawhorn,* the repayment was made only after the client's threat.

We do not discount the seriousness of the offenses committed by petitioner. Disbarment is generally the appropriate discipline in cases of wilful misappropriation (std. 2.2(a)); however, when the amount of funds involved is insignificant or the most compelling circumstances clearly predominate, the standards recommend actual suspension of not less than one year (*ibid.*). █ As we have explained, the record amply shows that significant mitigating factors predominate in this case. Petitioner's misconduct stemmed from inexactitude and insolvency, not greed or venality. The offenses are not so egregious as to warrant a suspension twice as long as the standards recommend.

We conclude that three years' suspension, execution stayed, with three years' probation and actual suspension of one year is appropriate. This conclusion is consistent with our prior cases, in which "only the most serious instances of repeated misconduct and multiple instances of misappropriation have warranted actual suspension, much less disbarment. [Citations.] A year of actual suspension, if not less, has been more commonly the discipline imposed in our published decisions involving but a single instance of misappropriation." (*Lawhorn, supra,* 43 Cal.3d at pp. 1367-1368.)[4]

Accordingly, we order that petitioner Juan Hipolito be suspended from the practice of law in this state for a period of three years, that execution of

---

[4] See, e.g., *Waysman* v. *State Bar, supra,* 41 Cal.3d 452 (misappropriation of $24,000 of client's money; no actual suspension); *Murray* v. *State Bar* (1985) 40 Cal.3d 575 [220 Cal.Rptr. 677, 709 P.2d 480] (misappropriation of $5,680 in client trust account; one year actual suspension); *McCray* v. *State Bar* (1985) 38 Cal.3d 257 [211 Cal.Rptr. 691, 696 P.2d 83] (misappropriation of $6,000 in settlement funds; one year actual suspension); *Alberton* v. *State Bar* (1984) 37 Cal.3d 1 [206 Cal.Rptr. 373, 686 P.2d 1177] (misappropriation of $115 from client funds delivered in trust; one year actual suspension); *Palomo* v. *State Bar* (1984) 36 Cal.3d 785 [205 Cal.Rptr. 834, 685 P.2d 1185] (misappropriated $3,000 by forging client's signature; no actual suspension); cf. *Smith* v. *State Bar* (1984) 37 Cal.3d 17 [206 Cal.Rptr. 545, 687 P.2d 259] (misappropriated settlement funds of $440 to $6,000 from three clients; one year actual suspension).

the order of suspension be stayed, and that petitioner be placed on probation for a period of three years on condition he be actually suspended from the practice of law for one year, and that he comply with all other conditions of probation recommended by the review department, as set forth in its decision filed June 28, 1988. (See Bus. & Prof. Code, § 6126, subd. (c).)

This order is effective upon the finality of this opinion.

**EAGLESON, J.**—I respectfully dissent. The majority's efforts to distinguish this case from *Lawhorn* v. *State Bar* (1987) 43 Cal.3d 1357 [240 Cal.Rptr. 848, 743 P.2d 908], are unavailing. Petitioner's misconduct was serious and willful; indeed, the majority brush aside facts which might justify *greater* discipline than that imposed on Lawhorn. At a time when consistency in discipline has assumed obvious importance, the majority's refusal to follow applicable precedent is insupportable. As in *Lawhorn*, I would order that petitioner be placed on probation for *five* years and suffer an actual suspension of *two* years.

The majority emphasize that Lawhorn avoided his client's calls, stalled further with a false story that his estranged wife had placed a "freeze" on his trust account, and repaid the misappropriated funds only after he was threatened with a State Bar complaint. In addition, the majority speculate that Lawhorn probably lied at his hearing when he claimed the funds improperly withdrawn from his trust account remained in a "stash box" in his refrigerator and were not used for his personal needs. (*Ante,* at p. 627.) By contrast, the majority observes, petitioner in this case made no false excuses to his client, spontaneously offered to repay in installments, and was candid in the disciplinary proceedings.

But our *Lawhorn* opinion belies any notion that the cited distinctions suggest more lenient discipline here. In *Lawhorn,* we affirmed that misappropriation is so serious as to warrant *disbarment* absent substantial mitigation. (43 Cal.3d at p. 1366 [citing *Tarver* v. *State Bar* (1984) 37 Cal.3d 122, 133 (207 Cal.Rptr. 302, 688 P.2d 911), and Rules Proc. of State Bar, div. V, Stds. for Atty. Sanctions for Prof. Misconduct, std. 2.2(a)].) However, we gave Lawhorn's repayment full mitigating credit because it occurred before an *actual* complaint was filed with the State Bar. We emphasized that Lawhorn's "stash box" testimony was "not implausible" on the evidence, and we found contextual excuses for his other possible lapses of candor before the State Bar. We made only a brief and oblique reference to Lawhorn's "account freeze" lie to his client, and we minimized its seriousness in light of Lawhorn's inexperience and life difficulties. We concluded that Lawhorn had been "foolish," "wrong," and negligent, but that he was not "venal." *After* viewing the case in this strong mitigating light, and *after*

discounting potentially aggravating dishonesty, we *nonetheless* imposed a two-year actual suspension. (43 Cal.3d at pp. 1366-1369.)

The starting point in any disciplinary case must be the seriousness of the underlying breach. Here petitioner, faced with financial difficulties, appropriated $2,000 of his client's money to his own use in the age-old hope that funds would materialize from another source to repay the client. The State Bar Court found that petitioner's conduct in this regard was "willful" and involved moral turpitude. The purpose of the strict trust account requirements is to protect client funds from just such maneuverings, however motivated. We have deemed willful misappropriation of trust funds a "gross" violation of professional ethics which undermines public confidence in the profession. (E.g., *Ambrose* v. *State Bar* (1982) 31 Cal.3d 184, 192-193 [181 Cal.Rptr. 903, 643 P.2d 486]; see also *Finch* v. *State Bar* (1981) 28 Cal.3d 659, 665 [170 Cal.Rptr. 629, 621 P.2d 253].)

Petitioner's demonstration of life difficulty, remorse, and atonement is not significantly greater than that we found in *Lawhorn*. Lawhorn and petitioner were of approximately equal experience, both faced financial and marital problems, and both repaid as promptly as they believed their financial circumstances permitted. Petitioner's hiring of a management firm to tighten his office practices is largely beside the point. His rob-Peter-to-pay-Paul financial misdealings arose not from lax oversight, but from a conscious, fundamental disregard of his professional obligations.

In any event, petitioner, unlike Lawhorn, has a *second,* separate instance of misconduct—his abandonment of client Castaneda. The majority dismiss this fact with the comment that "[t]he abandonment appears to have resulted from the same forces leading to the misappropriation, namely, petitioner's poor management skills. [Citation.]" (*Ante,* at p. 627, fn. 3.) I reject both the premise ("poor management skills" explain petitioner's problems) and the implied conclusion (the abandonment is irrelevant for purposes of discipline). On the contrary, a single incident of abandonment may warrant suspension (std. 2.4(b)), and a "pattern of misconduct" is an aggravating circumstance in any case (std. 1.2(b)(iii)).

Finally, while the State Bar's new disciplinary standards are not binding on us, they promote a healthy consistency in the sanctions imposed for various forms of attorney misconduct. Hence, we said in *Lawhorn* that "we will not reject a recommendation arising from application of the [s]tandards unless we have grave doubts as the propriety of the recommended discipline. . . ." (43 Cal.3d at p. 1366.) The State Bar Court's proposal that petitioner suffer a two-year actual suspension was based on application of

the standards. The majority fail to raise the "grave doubts" which would justify overturning the recommendation.

I see no reasoned basis for the majority's departure from the discipline imposed in *Lawhorn,* which involved similar and no more serious misconduct. I would adopt the State Bar Court's recommendation that petitioner be placed on probation for five years, with an actual suspension of two years.

Puglia (Robert K.), J.,* concurred.

.

---

*Presiding Justice, Court of Appeal, Third Appellate District, assigned by the Chairperson of the Judicial Council.