[No. S010568. Aug. 13, 1990.]

ROBERT B. STEVENS, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

**COUNSEL**

Robert B. Stevens, in pro. per., for Petitioner.

Diane C. Yu, Truitt A. Richey, Jr., Marta B. Galeano and Lawrence Yee for Respondent.

## OPINION

**THE COURT.**—We review the recommendation of the Review Department of the State Bar Court (review department) that petitioner, Robert B. Stevens, be suspended from the practice of law in the State of California for a period of three years, that execution of the order for suspension be stayed and that he be placed on probation for said period on the condition that he be actually suspended for a period of one year.[1] After considering the record and the arguments of petitioner and the State Bar, we conclude that the recommended discipline is appropriate.

### FACTS

Petitioner was admitted to the practice of law in California in December 1972. He has no prior disciplinary record.

### 1. *Count 1: The Ogden Matter*

In July 1979, Victoria Ogden retained petitioner to represent her in a personal injury action arising from an accident which occurred on February 2, 1979. Although petitioner did some informal discovery and assisted Ogden in obtaining medical treatment, he did not file a complaint on her behalf prior to the running of the statute of limitations.

Petitioner traveled abroad extensively during late 1979 and early 1980. He delegated the Ogden case to an attorney who handled other matters requiring action in his absence. Petitioner, however, did not tell Ogden that another attorney was handling her case. Upon his return from his travels, petitioner failed to notice that no complaint had been filed. Petitioner thereafter wrote Ogden and informed her that matters were progressing. In fact, even after petitioner knew that a complaint had not been filed and that the statute of limitations had long since expired, he continued to misrepresent

---

[1] The review department included in its conditions of probation that, inter alia, petitioner (1) comply with the provisions of rule 955, California Rules of Court; (2) take and pass the Professional Responsibility Examination one year after the effective date of the order of this court; (3) report to a probation monitor; and (4) make a good faith effort as determined by the probation monitor referee assigned to this matter to establish and maintain a schedule of payments to discharge the malpractice judgment obtained by Victoria Ogden (see discussion, *post*, this page.)

the status of the case to Ogden by telling her he was still working on a final settlement and would keep her informed. On June 26, 1980, he sent her a check from his own funds for $2,000 as an advance against the "settlement."

Finally in the fall of 1981, petitioner confessed to Ogden that he had missed the statute of limitations and suggested that she retain other counsel to bring action against him.

Ogden hired a new attorney and filed a malpractice action which resulted in a stipulated judgment in her favor in the amount of $20,000. This stipulated judgment still remains unpaid.

When this matter came before it, the hearing panel concluded that petitioner had, by his conduct, violated former rule 6-101(A)(2), Rules of Professional Conduct,[2] in that petitioner had acted with reckless disregard in failing to accomplish the purpose for which Ogden employed him. More specifically, the hearing panel found that petitioner failed to ensure that a complaint on Ogden's behalf was timely filed and showed a major lack of diligence in furthering her interests; petitioner also violated Business and Professions Code section 6103[3] in that petitioner's conduct was in violation of his oath and duty as an attorney since he misrepresented the status of Ogden's case to her. By misrepresenting the status of the matter to Ogden, the hearing panel found petitioner had committed an act of dishonesty and moral turpitude proscribed by Business and Professions Code section 6106.[4]

2. *Count 2: The Preussner Matter I*

In March 1986, petitioner was retained by Raimar Preussner to incorporate Preussner's company, Laguna Beach Rent-A-Car, which Preussner was then operating as a sole proprietorship. Preussner delivered a check to petitioner in the amount of $592.20 to cover fees and costs. The costs of incorporation were $277. Petitioner, however, did not deposit the costs in

---

[2] Rules of Professional Conduct, former rule 6-101(A)(2), stated: "A member of the State Bar shall not intentionally or with reckless disregard or repeatedly fail to perform legal services competently." (On May 27, 1989, new Rules of Professional Conduct became operative. Unless otherwise indicated, all further references to rules are to the former Rules of Professional Conduct of the State Bar.)

[3] Section 6103 provides: "A willful disobedience or violation of an order of the court requiring him to do or forbear an act connected with or in the course of his profession, which he ought in good faith to do or forbear, and any violation of the oath taken by him, or of his duties as such attorney, constitute causes for disbarment or suspension."

[4] Section 6106 provides: "The commission of any act involving moral turpitude, dishonesty or corruption, whether the act is committed in the course of his relations as an attorney or otherwise, and whether the act is a felony or misdemeanor or not, constitutes a cause for disbarment or suspension."

his client trust account. Instead, he deposited the full amount in his business account. He then sent a check to the Secretary of State in the sum of $277. The check was returned for insufficient funds, and the incorporation of Laguna Beach Rent-A-Car was cancelled. The hearing panel found the portion of the $592.20 which did not constitute attorney fees was commingled with petitioner's own funds and had been misappropriated by petitioner.

The hearing panel found that petitioner's actions in connection with the handling of the Preussner matter were a violation of former rule 8-101(A)[5] in that petitioner failed to deposit the funds received from Preussner in a trust account and he commingled them with his own funds. Petitioner also violated former rule 8-101(B)(3)[6] in that he failed to properly maintain accounts of the funds delivered to him by Preussner. Additionally, the hearing panel found that petitioner violated Business and Professions Code section 6103 in that he violated his oath and duties as an attorney. First, petitioner commingled his client's funds with his own. Second, petitioner uttered a bad check to the Secretary of State. Petitioner also violated Business and Professions Code section 6106 in that his misappropriation of Preussner's funds involved moral turpitude.

3. *Count 4: The Preussner Matter II*[7]

Preussner, who wanted to sell his Laguna Beach Rent-A-Car company, retained petitioner to represent him in the transaction. There were two prospective buyers, Murdock and Cabán. Petitioner prepared the escrow agreement listing himself as Preussner's attorney. Murdock and Cabán gave petitioner a check in the amount of $25,000. It was returned by the bank for insufficient funds. Nevertheless, petitioner incorporated the company on behalf of Murdock and Cabán before the close of escrow, thereby depriving Preussner of the use of the name. The sale was never consummated. Preussner neither knew of, nor consented to, the incorporation and thereafter found himself in litigation with a subsequent purchaser.

The hearing panel found petitioner's actions in connection with the incorporation of Laguna Beach Rent-A-Car amounted to a violation of former

---

[5] Former rule 8-101(A) stated in pertinent part: "(A) All funds received or held for the benefit of clients by a member of the State Bar or firm of which he is a member, including advances for costs and expenses, shall be deposited in one or more identifiable bank accounts labelled 'Trust Account', 'Client's Funds Account' or words of similar import . . . ."

[6] Former rule 8-101(B)(3) stated that State Bar members shall: "(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the member of the State Bar and render appropriate accounts to his client regarding them; preserve such records for a period of time of no less than five years after final appropriate distribution of such funds or properties; and comply with any order for an audit of such records issued pursuant to the Rules of Procedure of the State Bar."

[7] The hearing panel dismissed count 3.

rule 6-101(A)(2) in that petitioner intentionally failed to perform legal services competently. The hearing panel also found that petitioner violated Business and Professions Code section 6103 in that his misconduct was a violation of his oath and duties as an attorney.[8]

The review department adopted the recommendations of the hearing panel[9] as to the Ogden matter and as to each count of the Preussner matter with some modifications by a vote of 15 to 1.[10] In increasing the period of actual suspension from six months to one year, the review department advised that the record did not show sufficient reasons for deviating from the Standards for Attorney Sanctions for Professional Misconduct which, as the hearing panel acknowledged, would call for a minimum of one year's actual suspension in this matter.

## DISCUSSION

The primary purposes of sanctions imposed for professional misconduct are the protection of the public, the courts, and the legal profession; the maintenance of high professional standards by its members; and the preservation of public trust in the legal profession. (Rules Proc. of State Bar, div. V, Stds. for Atty. Sanctions for Prof. Misconduct, std. 1.3 [hereafter standards]; see also *Mepham* v. *State Bar* (1986) 42 Cal.3d 943, 948 [232 Cal.Rptr. 152, 728 P.2d 222].) ■ Although we attach significant weight to the discipline recommended by the review department, we ultimately make an independent determination as to the appropriate degree of discipline. (*Smith* v. *State Bar* (1985) 38 Cal.3d 525, 539 [213 Cal.Rptr. 236, 698 P.2d 139].) There is no fixed formula in deciding the appropriate discipline. (*Bernstein* v. *State Bar* (1972) 6 Cal.3d 909, 919 [101 Cal.Rptr. 369, 495

---

[8] With respect to count 5, the hearing panel found that at the time when petitioner was acting on behalf of Preussner and as escrow agent in the transaction with Cabán and Murdock, petitioner was also negotiating on behalf of Cabán and Murdock for the purchase of a limousine service and a car detailing company. The hearing panel, however, concluded that the State Bar had not established a violation of former rule 5-102(B) (representing adverse interests). The hearing panel noted in a footnote that although the State Bar maintained that the incorporation of Laguna Beach Rent-A-Car was a violation of former rule 5-102(B), they did not include this charge in the allegations of the notice to show cause nor make any effort to amend the notice to show cause. The hearing panel concluded that it was bound by the pleadings and did not propose to amend them *mea sponte* at that stage of the proceedings.

[9] The hearing panel consisted of a single referee who recommended that petitioner be suspended from the practice of law for a period of three years, that execution of suspension be stayed and that petitioner be placed on probation for three years on conditions that included a six-month period of actual suspension. The hearing panel's conditions of probation were the same as the review department's except as to the degree of discipline recommended. The review department increased the hearing panel's six-month recommendation of actual suspension to one year's actual suspension.

[10] Referee Lawson dissented on the ground that the recommended discipline was insufficient.

P.2d 1289].) Rather, this court must balance all relevant factors. (*Schneider v. State Bar* (1987) 43 Cal.3d 784, 798 [239 Cal.Rptr. 111, 739 P.2d 1279].) ■ After reviewing the record, we conclude that Stevens's conduct warrants the three-year suspension with one year's actual suspension recommended by the review department.

There is no factual dispute. Petitioner does not contest the findings of fact or conclusions of law of the hearing panel as modified by the review department. Petitioner does argue that this court should impose the hearing panel's recommendation of six months' actual suspension. He contends that the discipline recommended by the review department is excessive. Petitioner acknowledges the seriousness of his offenses and agrees that they have caused harm to his clients as well as to the profession. He urges a reduced suspension, however, without reference to the standards, or other explanation as to why the discipline is excessive. Rather, he relies upon court decisions which, as we explain, are distinguishable from this case because they involve far more persuasive mitigation than is present here.

The sole issue in this proceeding is the degree of discipline to be imposed. In determining the appropriate degree of discipline to be imposed, we must review the particular facts of each case and balance all relevant factors on a case-by-case basis. (*Franklin* v. *State Bar* (1986) 41 Cal.3d 700, 701 [224 Cal.Rptr. 738, 715 P.2d 699]; *Olguin* v. *State Bar* (1980) 28 Cal.3d 195, 200 [167 Cal.Rptr. 876, 616 P.2d 858]; *Codiga* v. *State Bar* (1978) 20 Cal.3d 788, 796 [144 Cal.Rptr. 404, 575 P.2d 1186]; *Bernstein* v. *State Bar, supra,* 6 Cal.3d 909, 919.) Viewed together, the circumstances present in this case warrant the recommended discipline.

In the Ogden matter, petitioner failed to file a complaint on behalf of his client within the statute of limitations to protect her interests. When he purposely misled Ogden about the status of her case, he was dishonest; this involves moral turpitude within the meaning of Business and Professions Code section 6106. (*Fitzpatrick* v. *State Bar* (1977) 20 Cal.3d 73 [141 Cal.Rptr. 169, 569 P.2d 763].)

In the Preussner matter I, petitioner commingled and misappropriated his client's funds. (*Giovanazzi* v. *State Bar* (1980) 28 Cal.3d 465, 475 [169 Cal.Rptr. 581, 619 P.2d 1005].) ■ The misappropriation of client funds alone constitutes a serious ethical and moral violation, breaches the high duty of loyalty which an attorney owes to his clients, violates basic principles of honesty, and puts in peril the public's confidence in the legal profession. We have held that such conduct is a serious offense which warrants

disbarment in the absence of extenuating circumstances. (*Kelly* v. *State Bar* (1988) 45 Cal.3d 649, 656 [247 Cal.Rptr. 608, 754 P.2d 1104]; *Lawhorn* v. *State Bar* (1987) 43 Cal.3d 1357, 1366 [240 Cal.Rptr. 848, 743 P.2d 908]; *Finch* v. *State Bar* (1981) 28 Cal.3d 659, 665 [170 Cal.Rptr. 629, 621 P.2d 253].) Only if the mitigation is compelling will disbarment not be recommended and, in that event, a period of actual suspension is often imposed. (*Hipolito* v. *State Bar* (1989) 48 Cal.3d 621, 628 [257 Cal.Rptr. 331, 770 P.2d 743]; *Lawhorn* v. *State Bar, supra,* 43 Cal.3d at pp. 1367-1368; *Alberton* v. *State Bar* (1984) 37 Cal.3d 1, 15 [206 Cal.Rptr. 373, 686 P.2d 1177].)

In the Preussner matter II, petitioner represented Preussner in the negotiation and preparation of the agreement selling Preussner's business, and acted as an escrow agent in the sale. He was also representing the buyers, Cabán and Murdock, in other matters. Petitioner nevertheless incorporated Preussner's company in Cabán's and Murdock's names before the sale was completed, and without Preussner's knowledge or consent. Petitioner failed to perform services competently and violated Business and Professions Code section 6103 in that his misconduct was a violation of his oath and duties as an attorney. Petitioner does not contest that his misconduct was intentional; in fact, he fails to address this count at all in his brief. The fact that the misconduct was intentional affects the degree of discipline imposed under the corresponding standard 2.10, requiring reproval or suspension.

■ We have held that client neglect is a serious form of misconduct which warrants substantial discipline. (*Carter* v. *State Bar* (1988) 44 Cal.3d 1091, 1100 [245 Cal.Rptr. 628, 751 P.2d 894].) Such conduct by an attorney constitutes a serious breach of the fiduciary duty owed by the attorney to his client and accordingly warrants the imposition of discipline. In *Finch* v. *State Bar, supra,* 28 Cal.3d 659, 665, we held that "the wilful failure to perform legal services for which an attorney has been retained in itself warrants disciplinary action, constituting a breach of the good faith and fiduciary duty owed by the attorney to his clients." (See also *Ridge* v. *State Bar* (1989) 47 Cal.3d 952 [254 Cal.Rptr. 803, 766 P.2d 569]; *Franklin* v. *State Bar, supra,* 41 Cal.3d 700, 710; *Smith* v. *State Bar, supra,* 38 Cal.3d 525, 539; *Lester* v. *State Bar* (1976) 17 Cal.3d 547, 551 [131 Cal.Rptr. 225, 551 P.2d 841].)

Moreover, the standards provide that where an attorney is culpable of commingling entrusted funds, the minimum discipline shall be at least three months' actual suspension from the practice of law, irrespective of mitigating circumstances. (Std. 2.2(b).) Where there is wilful misappropriation, the minimum discipline is one year's actual suspension, irrespective of mitigating circumstances. (Std. 2.2(a).) Standard 2.2(a) provides: "Culpability of a

member of wilful misappropriation of entrusted funds or property shall result in disbarment. Only if the amount of funds or property misappropriated is insignificantly small or if the most compelling mitigating circumstances clearly predominate, shall disbarment not be imposed. In those latter cases, the discipline shall not be less than one year actual suspension, irrespective of mitigating circumstances."

■ While the State Bar's disciplinary standards are not binding on us, we recognized standard 2.2(a) in *Hipolito* v. *State Bar, supra*, 48 Cal.3d 621, where an attorney who had misappropriated $2,000 from one client and abandoned another was ordered suspended for a period of three years, stayed, on conditions of probation that included one year's actual suspension. We held: "Disbarment is generally the appropriate discipline in cases of wilful misappropriation (std. 2.2(a)); however, when the amount of funds involved is insignificant or the most compelling circumstances clearly predominate, the standards recommend actual suspension of not less than one year (*ibid.*). . . . [¶] We conclude that three years' suspension, execution stayed, with three years' probation and actual suspension of one year is appropriate. This conclusion is consistent with our prior cases, in which 'only the most serious instances of repeated misconduct and multiple instances of misappropriation have warranted actual suspension, much less disbarment. [Citations.] A year of actual suspension, if not less, has been more commonly the discipline imposed in our published decisions involving but a single instance of misappropriation.'" (*Id.* at p. 628; see also *Kelly* v. *State Bar, supra*, 45 Cal.3d at p. 658; *Lawhorn* v. *State Bar, supra*, 43 Cal.3d at pp. 1367-1368.)

■ In addition, disbarment or suspension is required for violations of Business and Professions Code section 6103 pursuant to standard 2.6(b). For violation of former rule 8-101, reproval or suspension is required under standard 2.10. Standard 1.6(a) provides that if two or more acts of misconduct are found in a single proceeding the sanction imposed shall be the most severe of those which are appropriate. The appropriate sanction, therefore, under the standards is not less than one year's actual suspension. Following the guidance provided by the standards, the recommended discipline, including one year's actual suspension, is reasonable and well supported by the evidence.

In support of his contention that the recommended discipline is excessive, petitioner relies principally on *Chasteen* v. *State Bar* (1985) 40 Cal.3d 586 [220 Cal.Rptr. 842, 709 P.2d 861]; *Waysman* v. *State Bar* (1986) 41 Cal.3d 452 [224 Cal.Rptr. 101, 714 P.2d 1239]; and *In re Cohen* (1974) 11 Cal.3d 935 [114 Cal.Rptr. 611, 523 P.2d 651]. These cases, however, are

distinguishable from petitioner's case in that in them we considered recovery from alcoholism as a mitigating factor. That factor is not present here.

Moreover, the recommended discipline is not excessive in light of recent decisions of this court. In *Hipolito* v. *State Bar, supra,* 48 Cal.3d 621, where the attorney misappropriated $2,000, we ordered that the attorney be suspended for three years with execution stayed and that he be placed on probation for three years with one year's actual suspension.

In *Lawhorn* v. *State Bar, supra,* 43 Cal.3d 1357, a relatively inexperienced attorney misappropriated $1,355.75 from one of his clients. The attorney claimed that he placed $1,100 of the funds he withdrew from the client trust fund and enough other cash to make up the amount due to his client in a "stash box" in his refrigerator. The court suspended the attorney for five years, execution stayed, with two years' actual suspension.

In *Ridge* v. *State Bar, supra,* 47 Cal.3d 952, an attorney wilfully failed to perform legal services, wilfully failed to communicate with the client, and knowingly misrepresented to the client the status of the case. The attorney was also found culpable of mishandling an estate (including commingling). We ordered that the attorney be suspended from practice for three years, with one year's actual suspension.

In the present case, petitioner has on separate occasions failed to perform the legal services for which he was hired, thereby causing harm to his clients, has lied to his clients, and has commingled and misappropriated client funds. Under the circumstances, the recommended discipline is consistent with the standards and is consistent with recent court decisions.

## DISPOSITION

We order that petitioner Robert B. Stevens be suspended from the practice of law in the State of California for three years, that execution of his suspension be stayed, and that he be placed on probation for three years upon all the conditions set forth by the review department, including actual suspension for one year. We further order that Stevens take and pass the Professional Responsibility Examination within one year of the effective date of our order (see *Segretti* v. *State Bar* (1976) 15 Cal.3d 878, 891 [126 Cal.Rptr. 793, 544 P.2d 929]), that he regularly report to a probation monitor, and that he make a good faith effort as determined by the probation monitor to establish and maintain a schedule of payments to discharge

the malpractice judgment obtained by Victoria Ogden. This order is effective upon finality of this decision in this court. (See Cal. Rules of Court, rule 24(a).)